# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================================

## ON MOTION FOR REHEARING EN BANC

========================================

### NO. 03-04-00813-CV

**Appellants, Dr. Phillip Osborne and Deborah Osborne //
Cross-Appellant, State Farm Lloyds**

**v.**

**Appellee, Jauregui, Inc. // Cross-Appellees, Dr. Phillip Osborne and Deborah Osborne**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. 99-08727, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

---

## O P I N I O N

Appellee Jauregui, Inc. has filed a motion for rehearing en banc, and cross-appellant State Farm Lloyds has filed motions for rehearing and for rehearing en banc. We grant Jauregui's and State Farm's motions for rehearing en banc. We withdraw our earlier opinion and judgment, dated August 29, 2007, and substitute this opinion.

This appeal arises from a dispute between appellants and cross-appellees Dr. Phillip Osborne and Deborah Osborne and appellee Jauregui, Inc. Jauregui was the architect and builder of the house the Osbornes bought, and State Farm provided the Osbornes' home-owners insurance policy. After mold was discovered in the house, State Farm paid $1,874,687 in mold-

related claims.[1]  Despite receiving those payments, the Osbornes sued Jauregui and numerous subcontractors, settling with the subcontractors before trial for more than $1,000,000.  After the jury returned a verdict finding that the Osbornes had suffered approximately $835,000 in damages, the trial court applied a settlement credit in Jauregui's favor and entered judgment that the Osbornes should take nothing on their claims.  The trial court declined to award attorney's fees to the Osbornes or to grant State Farm subrogation rights in the proceeds from the Osbornes' settlement with the subcontractors.  The Osbornes and State Farm both appealed.  We affirm the denial of attorney's fees but reverse the court's refusal to allow State Farm subrogation rights against the settlement proceeds.

## Factual and Procedural Background

In 1997, the Osbornes bought a house from Jauregui for slightly more than $1 million.  Shortly after moving in, the Osbornes noticed flaws in the construction.  They later learned that the house had serious mold problems due to various construction errors.  The Osbornes also claimed that because the house was built along a golf course, golf balls frequently hit and damaged the house, although Jauregui and its realtor had assured them there would be no "golf ball problem."  Before filing suit, the Osbornes sent Jauregui a demand letter offering to settle their claims for $866,000, and Jauregui countered with an offer for $12,810.  The Osbornes declined Jauregui's counter-offer and in July 1998, they sued Jauregui and its owner, Jose Luis Jauregui, asserting causes of action under the Texas Deceptive Trade Practices Act ("DTPA") and for breach of contract, negligence,

---

[1]  State Farm paid a total of $1,874,687 for the Osbornes' claims.  Most of that was paid to the Osbornes, including policy limits of $1,071,600 for damage to the structure, but about $500,000 was paid to third parties for alternate living expenses and moving/storage costs.  State Farm also paid more than $150,000 for experts to examine the house and testify at trial.

breach of warranty, real estate fraud, and negligent misrepresentation. *See* Tex. Bus. & Comm. Code Ann. §§ 17.41-.63 (West 2002 & Supp. 2007). The Osbornes also sued a number of Jauregui's subcontractors and suppliers of construction materials, alleging negligence, breach of warranty, DTPA violations, and products liability.[2] State Farm intervened as the Osbornes' subrogee. Rather than repair the house, the Osbornes sold the house "as is" before trial for $750,000. Shortly before trial, the Osbornes settled with all of the defendants except for Jauregui for a total of $1,260,500, $1,120,500 of which remained in the court's registry after the payment of expert witness fees. The Osbornes proceeded to trial against Jauregui, asserting that they had suffered at least $2,418,000 in damages.

The jury found that Jauregui was negligent and breached warranties made to the Osbornes and that Jauregui was responsible for 48% of the Osbornes' damages; the subcontractors were responsible for the remaining 52%. The jury found that the Osbornes suffered damages totaling $835,158.78: $250,000 for repairs to bring the house to the condition reasonably expected when they bought it; $220,000 for lost or damaged clothing and non-furniture personal effects; $70,000 for non-clothing items condemned due to mold contamination; $28,000 for repairs actually made by the Osbornes; $1,000 for damaged furniture; $95,158.78 in alternate living expenses; and $171,000 for moving, storage, and cleaning of their belongings.[3] The jury found that Jauregui did not engage in unconscionable conduct, deceptive practices, fraud, or negligent misrepresentation.

---

[2] The Osbornes also sued Jauregui's realtor, but those claims are not part of this appeal.

[3] The jury also found that Phillip Osborne was entitled to $50,000 for mental anguish, but the trial court concluded that, "[a]bsent physical injury, Dr. Osborne is not entitled to recover damages for mental anguish."

Jauregui elected a dollar-for-dollar credit of the settlement funds against the jury's damages award, and the trial court entered judgment that the Osbornes should take nothing against Jauregui, refusing to award them attorney's fees against Jauregui and denying State Farm's claim that it was entitled to subrogation against the settlement funds. The court made findings of fact and conclusions of law in which it found that there was evidence that the Osbornes had incurred $1,149,641.30 in attorney's fees,[4] but concluded that they were not entitled to attorney's fees because they did not obtain a net recovery from Jauregui or segregate the fees among the various claims and parties. The court also found that because State Farm did not pay any of the Osbornes' attorney's fees, the fees incurred by the Osbornes were "an uncompensated expense of collection." The court further found that State Farm did not present evidence showing what portions of the settlement funds were "allocated to the items State Farm paid for . . ., as opposed to other items of damage and expenses of collection alleged by [the Osbornes] in their petitions that State Farm had not paid for, such as mental anguish, bodily injury, repairs and attorney's fees." The court concluded that because State Farm had not shown that the settlement proceeds were payments for losses it had covered, it was not entitled to those funds.

On appeal, the Osbornes argue that they were "prevailing parties" under the DTPA and were not required to segregate their attorney's fees between the various defendants and claims. In its cross-appeal against the Osbornes, State Farm argues that the trial court abused its discretion in denying State Farm's subrogation claim because that denial grants the Osbornes a double recovery and violates the one-satisfaction rule. State Farm also argues that any money received from Jauregui

---

[4] The Osbornes have since received $17,606.01 from one of the defendants and state that if they prevail, the fees should be reduced to $1,132,035.29. They also seek $50,000 in appellate fees.

4

would be subject to State Farm's subrogation rights and that the trial court properly denied the Osbornes' request for attorney's fees.

**The One-Satisfaction Rule**

Both questions at issue here—whether attorney's fees should be awarded and whether State Farm is entitled to subrogation rights—involve the one-satisfaction rule, which is "the longstanding proposition that a plaintiff should not be compensated twice for the same injury." *CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 683 (Tex. App.—Austin 2005, no pet.) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991)); *see Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). The rule guards against a plaintiff receiving a windfall "by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed. The plaintiff would otherwise be recovering an amount greater than the trier of fact has determined would fully compensate for the injury." *First Title Co. v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993). The one-satisfaction rule applies both when several defendants commit the same act and when multiple defendants commit "technically different acts" that result in the same, single injury. *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Casteel*, 22 S.W.3d at 390). The application of the rule is not limited to tort claims, and whether the rule may be applied depends not on the cause of action asserted but rather the injury sustained. *Id.* (citing *El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex. 1993); *Stewart Title*, 822 S.W.2d at 8). Thus, if the plaintiff has suffered only one injury, even if based on "overlapping and varied theories of liability," the plaintiff may only recover once; "[t]his is especially true if the evidence supporting each cause

5

of action is the same." *Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 590 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

**Attorney's Fees**

On appeal, the Osbornes argue that they were "prevailing parties" under the DTPA and were not required to segregate their attorney's fees because those fees were incurred due to the same facts and were inextricably intertwined. They contend they are entitled to $1,132,035.29 for attorney's fees incurred through trial, plus $50,000 for appellate attorney's fees. Jauregui and State Farm contend that the trial court properly denied the Osbornes' request for attorney's fees, arguing that the Osbornes were not prevailing parties under the DTPA.

A party may not recover attorney's fees from the opposing party unless an award of attorney's fees is authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). We review de novo a trial court's determination of whether a plaintiff is entitled to attorney's fees under a particular statute. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). Whether and the extent to which attorney's fees can be segregated is a mixed question of law and fact, and if segregation is possible, remand is required. *Tony Gullo Motors*, 212 S.W.3d at 313-14.

Under the DTPA, a plaintiff who "prevails" is entitled to reasonable and necessary attorney's fees. Tex. Bus. & Comm. Code Ann. § 17.50(d) (West Supp. 2007). The supreme court has explained that to "prevail" under the DTPA means "to prevail in a claim under the Act, rather than to obtain a net recovery on all claims joined in one lawsuit." *McKinley v. Drozd*, 685 S.W.2d 7, 9 (Tex. 1985). A plaintiff may be considered a prevailing party and thus entitled to attorney's fees

6

even if his claim is "entirely offset by a claim of an opposing party." *Id.*; *Roberts v. Grande*, 868 S.W.2d 956, 962 (Tex. App.—Houston [14th Dist.] 1994, no writ).

However, as discussed by our sister court in *Hamra v. Gulden*, the rule that a net recovery is not necessary for a plaintiff to be considered a prevailing party "does not apply in a case in which a consumer has already received payment of an amount equal to or greater than the damages found by the fact finder in the trial of the consumer's case against the non-settling defendant." 898 S.W.2d 16, 19 (Tex. App.—Dallas 1995, writ dism'd w.o.j.) (citing *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 806 (Tex. App.—Dallas 1988, no writ)). "It is one thing to allow a party an attorney's fees award on a successful claim notwithstanding an opposing party's success on an offsetting claim. However, it is another to allow attorney's fees on a claim that, although successful, was paid in full before trial." *Id.* (citing *Blizzard*, 756 S.W.2d at 806); *see also Buccaneer Homes*, 43 S.W.3d at 591 (consumer sued retailer and manufacturer, settling with retailer pre-trial, and jury found that manufacturer breached warranty; because damages "were paid in full under the pre-trial settlement agreement with the retailer," consumer could not recover attorney's fees from manufacturer); *Blizzard*, 756 S.W.2d at 806-07 (insurer not liable for attorney's fees because it had paid all damages).

Although the supreme court in *McKinley* held that under the DTPA "the more sensible meaning of the word 'prevail' is to prevail in a claim under the Act, rather than to obtain a net recovery on all claims joined in one lawsuit," 685 S.W.2d at 9, the court did not hold that a claim entirely offset by the settlement *of that same claim by other defendants* could support an award of attorney's fees. *McKinley* concerned only the question of whether a damages award offset by a

7

defendant's counterclaim, a claim alleging different injuries and different theories of recovery, could support attorney's fees. *See id*. at 8-9.

The Osbornes sued Jauregui for breach of contract, negligence, breach of warranties, DTPA violations, fraud, real estate fraud, and negligent misrepresentation. The breach of contract claim complained that Jauregui failed to make "all necessary repairs" before closing and that the house was "full of construction defects." The negligence claim complained that Jauregui failed to act with the skill and care of a "reasonably competent building contractor." The Osbornes complained that Jauregui held itself out as one of the top builders in Austin and warranted that its construction projects showed "excellence in architecture and quality construction," it had expertise in design and finish-out of high-quality homes, and it "led an extensive team of expert builders, architects and project administrators." They further alleged that Jauregui warranted that the house was constructed in a good and workmanlike manner, was suitable for human habitation, had no "golf ball problem," and had been repaired in a good and workmanlike manner. They alleged that Jauregui committed fraud and negligent misrepresentation and violated the DTPA by breaching its warranties, making false representations, failing to disclose construction defects, withholding or misrepresenting material facts, and failing to construct the house properly or adequately remedy construction defects.

The jury found that Jauregui was negligent and breached warranties that the house was fit for its intended purpose, built in a good and workmanlike manner, or fit for human habitation, but did not intentionally breach any warranties, commit fraud, or make negligent misrepresentations or engage in unconscionable, false, misleading, or deceptive acts. The trial court found that the Osbornes brought claims of breach of warranty, negligence, or DTPA violations against all of the

8

defendants except the cleaning/storage company, which was sued for breach of contract and DTPA violations. Therefore, the settling defendants paid $1,260,500 to settle the same claims on which the Osbornes proceeded to trial against Jauregui. The Osbornes' claims against Jauregui were not offset by a counterclaim, but rather by payments made by co-defendants to satisfy the same damages claims that were leveled against Jauregui as architect and builder of the house—negligence, breach of warranty, and DTPA violations.

Although the Osbornes claimed more than $2,000,000 in damages, the jury disagreed, and its unchallenged finding of $835,158.78 in damages, of which Jauregui was responsible for 48%, is a definitive determination binding on this Court. Consequently, they may not now receive from Jauregui more than $1,000,000 in attorney's fees, including fees incurred after they settled with the other defendants.[5] The claims for which Jauregui was found liable were the same as those brought against and settled pre-trial by the other defendants well in excess of the jury's award; therefore, the Osbornes are not entitled to attorney's fees from Jauregui. *See Buccaneer Homes*, 43 S.W.3d at 591; *Hamra*, 898 S.W.2d at 19. We overrule the Osbornes' issue on appeal.

**Subrogation**

Having decided that the Osbornes are not entitled to attorney's fees from Jauregui, we now turn to State Farm's argument that it is entitled to the settlement proceeds because the

---

[5] Having held that the Osbornes are not entitled to attorney's fees, we need not consider whether they were required to segregate their fees. We note that the Osbornes did not attempt to segregate their attorney's fees between the various defendants or between pre- and post-settlement work. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006) ("Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.").

Osbornes have already been "made whole" by State Farm's insurance payments.[6] State Farm argues that allowing the Osbornes to keep the settlement funds gives them a double recovery and that equity and the one-satisfaction rule demand that State Farm be awarded the settlement funds without having to prove which settlements were for claims paid by State Farm.

As we have stated, the one-satisfaction bars a plaintiff from being compensated twice for one injury. *Crown Life Ins.*, 22 S.W.3d at 390; *CTTI Priesmeyer*, 164 S.W.3d at 683. In the same vein, the principle of subrogation provides that once an insured is made whole from his damages, the insurer that has paid for the insured's covered losses is entitled to the insured's rights and remedies against a third party for the covered losses. *Harris v. American Prot. Ins. Co.*, 158 S.W.3d 614, 622 (Tex. App.—Fort Worth 2005, no pet.). Texas courts are "particularly hospitable" to the concept. *Id.* (quoting *Interfirst Bank Dallas, N.A. v. United States Fid. & Guar. Co.*, 774 S.W.2d 391, 397 (Tex. App.—Dallas 1989, writ denied)); *see Rowland & Rowland, P.C. v. Texas Employers Indem. Co.*, 973 S.W.2d 432, 436 (Tex. App.—Austin 1998, no pet.) ("there is an abundance of case law in which Texas courts have manifested their interest in examining settlements in third-party actions to ensure an insurance carrier's right to subrogation").

Absent a contractual provision, subrogation is based on equitable principles and we will not disturb a trial court's balancing of the equities unless "it would be inequitable to allow the judgment to stand." *Esparza v. Scott & White Health Plan*, 909 S.W.2d 548, 552

---

[6] State Farm paid $1,071,600 for the structure; a total of $210,368.27 for the Osbornes' clothing and personal effects; $190,319.57 for alternative living expenses; $60,644.02 for furniture and similar items; and a total of $341,755.42 for various moving, storage, and cleaning expenses.

(Tex. App.—Austin 1995, writ denied).[7] If either an insured or an insurer "must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *Ortiz v. Great S. Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 344 (Tex. 1980) (quoting *Garrity v. Rural Mut. Ins. Co.*, 253 N.W.2d 512, 514 (Wis. 1977)). An insurer is not entitled to equitable subrogation until the insured is "made whole" for his loss. *Esparza*, 909 S.W.2d at 552; *Ortiz*, 597 S.W.3d at 343.

Although the Osbornes sued numerous parties involved in the construction of their home, they suffered but one injury—the defective house. The Osbornes essentially concede this point by their argument that they cannot segregate their attorney's fees between the various defendants because the claims were too interrelated to be separated from one another. The jury found that the Osbornes suffered $835,158.78 in damages from their one injury. That finding was a definitive assessment of the Osbornes' damages, and they do not attack the jury's award on appeal. Therefore, the Osbornes were entitled to one recovery in the amount of $835,158.78 for their one injury. State Farm paid a total of $1,874,687 for the Osbornes' claims. Even before filing suit, the Osbornes, therefore, had been made whole by State Farm's insurance payments.[8] *See Blizzard*,

---

[7] In *Esparza v. Scott & White Health Plans*, we noted that subrogation "is not easily detached from equitable principles" and held that "[c]ontracts that give insurers the right to subrogation 'confirm, but [do] not expand, the equitable subrogation rights of insurers.'" 909 S.W.2d 548, 552 (Tex. App.—Austin 1995, writ denied) (quoting *Oss v. United Servs. Auto. Ass'n*, 807 F.2d 457, 460 (5th Cir. 1987)). However, in *Fortis Benefits v. Cantu*, the supreme court stated, "We generally adhere to the maxim that 'equity follows the law,' which requires equitable doctrines to conform to contractual and statutory mandates, not the other way around. Where a valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy." 234 S.W.3d 642, 648-49 (Tex. 2007).

[8] The public policy considerations at work here are similar to those that arise when examining whether a party is a prevailing party under the DTPA. *See Blizzard v. Nationwide Mut.*

11

756 S.W.2d at 806 ("the evidence is undisputed that Nationwide had already paid more than the sum found by the jury and was entitled to a credit for those payments").

The trial court found that the Osbornes incurred $1,132,035.29 in attorney's fees to pursue their claims against the various defendants. The court further found that although the Osbornes could have segregated their attorney's fees incurred in pursuing their claims against the various settling defendants, they failed to do so. Although the trial court found that the Osbornes' attorney's fees were uncompensated costs of collection, there is no showing in the record that the Osbornes asked State Farm to represent them to pursue these claims or that State Farm refused to represent them or otherwise participate in the suit. Instead, State Farm intervened and participated in the suit; State Farm asserts, and the Osbornes do not dispute, that its participation was in support of the Osbornes and their claims against the defendants.

Under these facts, the Osbornes have already recovered insurance payments well in excess of the damages the jury determined they incurred. Whether State Farm underpaid on some subcategories of damages, such as clothing or personal effects, is rendered unimportant by the fact

---

*Fire Ins. Co.*, 756 S.W.2d 801, 806-07 (Tex. App.—Dallas 1988, no writ) (party may be considered prevailing party under DTPA even if damages recovered are entirely offset by damages awarded to opposing party in counterclaim; "However, that rule does not apply in a case like this one in which the damages found have already been paid. It is one thing to allow a party an award of attorney fees on a successful claim notwithstanding an opposing party's success on an offsetting claim. It is quite another to allow attorney fees on a claim which, although successful, was paid in full before trial."). In this case, the Osbornes filed suit after having been made whole under the jury's valuation of their damages, settled with the subcontractors for an amount well beyond the damages they suffered and for which they had already been compensated, and then continued with the lawsuit against Jauregui. Having been made more than whole for the damages that the jury determined they had incurred, the Osbornes have continued to pursue claims against Jauregui and others, using judicial resources to pursue recovery beyond that to which they are entitled.

12

that State Farm *overpaid* the Osbornes by $793,600 for damage to the structure.[9] Any shortfall between a particular insurance payment and an amount of damages awarded by the jury is covered when the overpayment for the structure is applied.[10] The settlement funds, which were paid by defendants against whom the Osbornes asserted the same damages claims determined by the jury, paid for the property damage suffered by the Osbornes, which was the same injury paid by State Farm's payments. There were no uncovered damages suffered in this case, and thus there is no issue of State Farm recovering policy payments from settlement sums intended to pay for uncovered injuries.

To refuse subrogation in this case would result in the Osbornes receiving a windfall well beyond the $835,000 in damages they suffered and State Farm being left without remedy to recover any of the nearly $2,000,000 it paid to the Osbornes for their claims related to the defective home.[11]

---

[9] State Farm paid policy limits of $1,071,600 for the structure, and the jury found that the Osbornes were entitled to $250,000 for repairs necessary to fix the structure.

[10] The Osbornes argue we should not apply overpayments to areas of shortfall. However, subrogation involves matters of equity, and it would be inequitable to hold State Farm responsible for underpaying on certain areas of damage while ignoring its large overpayment as to the structural damage. Nor are we persuaded by the Osbornes' argument that State Farm is estopped from claiming that the Osbornes have been made whole by State Farm's statements in their briefs in support of the Osbornes' claims that the insurance payments covered "a portion of" the Osbornes' damages. An allegation such as this, made in support of the Osbornes' suit, does not amount to a judicial admission and cannot be held against State Farm in the face of a jury verdict making a definitive determination of the Osbornes' damages.

[11] We note that, subtracting the Osbornes' damages from the payments they received from State Farm, the Osbornes have already received an excess of $1,039,528.42, which nearly covers the $1,149,641.30 they seek for their attorney's fees through trial.

13

Furthermore, if a contract provides for subrogation regardless of whether the insured is first made whole, "[t]he contract's specific language controls . . . and the equitable defense of the 'made whole' doctrine must give way." *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007). "[C]ontract-based subrogation rights should be governed by the parties' express agreement and not invalidated by equitable considerations that might control by default in the absence of an agreement." *Id.* at 650.

The Osbornes' policy included the following subrogation provision:

> An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

> If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

Although this provision uses the word "may," as opposed to the provision in *Fortis Benefits*, which read that the insurance company "will be subrogated to all rights of recovery," *see id.* at 645 n.11, the clause provides that State Farm had the right to require an assignment of rights and, if assignment was sought, the Osbornes were contractually required to cooperate. This contract provision establishes that State Farm had the contractual right to subrogation against sums paid for losses that were covered and paid by State Farm. The record does not reflect whether State Farm presented the Osbornes with an explicit demand for subrogation, but State Farm's actions throughout this case show an intention to obtain subrogation against sums paid to the Osbornes.

We sustain State Farm's first and second issues and reverse the trial court's judgment denying State Farm subrogation rights in the settlement funds.

## Conclusion

We have held that the Osbornes are not prevailing parties so as to be entitled to attorney's fees under the DTPA. We have further held that the Osbornes were made whole for their one injury and therefore that State Farm is entitled to subrogation interests in the settlement funds. We affirm the trial court's judgment denying the Osbornes attorney's fees from Jauregui. We reverse the judgment denying State Farm subrogation in the settlement and render judgment that State Farm is entitled to subrogation against the remaining settlement funds.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson, Puryear, Pemberton, Waldrop and Henson;
  Dissenting Opinion by Justice Henson, joined by Justice Patterson

Affirmed in part; Reversed and Rendered in part on Motion for Rehearing En Banc

Filed:  April 17, 2008