# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00619-CV

**Galle, Inc., Appellant**

**v.**

**Joe Pool and Leslie Pool, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-GN-03-003334, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## O P I N I O N

Galle, Inc., appeals from a judgment awarding Joe and Leslie Pool the sum of $214,400.58, plus prejudgment interest and costs. The judgment was based on jury findings that Galle made a negligent misrepresentation on which the Pools justifiably relied, proximately causing them a total of $214,400.58 in actual damages. Galle brings a single issue, contending that the district court erred in refusing to apply a $532,000.00 dollar-for-dollar credit reflecting the amount of the Pools' settlement with a co-defendant, Allstate Texas Lloyds Company, and render judgment that the Pools take nothing on their claims against Galle. On this record, we conclude that the district court was required to apply the settlement credit. Consequently, we will reverse the district court's judgment and render judgment that the Pools take nothing on their claims against Galle.

The underlying action is a mold suit. The Pools were the named insureds on a homeowners policy with Allstate Texas Lloyds Company covering their Dripping Springs house and

its contents.  At trial, Joe Pool, an attorney, testified that while wife Leslie was overseeing the remodeling of a bathroom on the lowest level of the house, mold was discovered "between the lavatory and the wall."  Leslie, "who knew there was a problem, called it in to our carrier," Allstate.  The Pools alleged they filed this claim on or about June 30, 2002.  In response to their claim, the Pools alleged that, on or about August 6, Allstate "selected and employed Hometest, Inc. to assist them in their investigation" of the Pools' claim.  Hometest proceeded to test the house for mold.  The Pools pled that, "A tester for Hometest, however, left an air plug on the attic HVAC condensation drainage line unplugged when he finished testing the inside of the drainage line.  This resulted in substantial water intrusion to the ceiling and floor of the third floor of the Residence."

Joe Pool recounted that "we got a phone call September 5" from an Allstate representative informing them that "test results came back and . . . it's really bad, and you've got to leave the house and . . . don't take anything with you."  The Pools grabbed a few possessions and moved first to the Four Seasons in Austin, then to the Driskill.  They remained at the Driskill until late December 2002, when they moved to a rental house in the Westlake area of Austin.  The Pools remained at this location until approximately July 2003, thereafter moving to two other rental homes, a Home Suites, and finally a trailer on their property before work was finally completed on their house.

Joe Pool explained that, "I was told that I had to hire and contract with a remediation company . . . to fix the mold problem and . . . get the house right," as well as a contractor to rebuild damaged portions of the house thereafter.  It so happened that a Driskill employee whom Joe Pool had befriended was engaged to Danny Galle, who at the time was involved in the mold remediation

business. Galle's fianceé arranged a meeting, and the Pools, with Allstate approval and funding, eventually executed a contract with Galle, Inc., dated October 22, 2002. The contract specified that Galle would remove, remediate, and store the contents of the house; and remediate the house. The contract contemplated that after Galle had finished remediating the house, an "independent testing company selected by Allstate" would perform "visual and air test clearance." Once the house passed the clearance testing, it was contemplated that rebuilding on the house could begin. Upon completion of the rebuild, the contract provided that Galle would return the contents to the house.

Galle proceeded to perform work on the house. The work included such tasks as constructing plastic barriers to contain mold in areas where it had been found, cleaning personal possessions by vacuuming or wiping them with chemical agents before storing them, removing the house's air conditioning units, and removing portions of the structure found to have been infested with mold. In December 2002, an independent testing laboratory retained by Allstate, Test Force, performed "clearance testing" on the house. The house failed this first round of testing. Galle performed additional work specified by Test Force. Test Force conducted another round of tests in early January 2003. The Pools were present for the second tests, along with a contractor, Steve Harris, with whom the Pools had been negotiating regarding the planned rebuild. Test Force concluded that the house passed the tests. However, claiming that he saw black or dark red "splotches" on surfaces in the house that he feared were mold, Joe Pool insisted that those surfaces be tested for mold. According to Joe, Galle, Test Force, and Allstate refused to have additional testing conducted, even when Joe offered to pay for it.

3

For several months thereafter, the Pools were embroiled in disputes with Allstate regarding whether the house was free of mold and ready for the rebuild to begin and the scope of the rebuild that Allstate would pay for. The Pools eventually obtained counsel and found another firm to test for mold in the house. This re-testing was not performed until mid-August 2003. By this time, the house had sat largely empty for several months, with air conditioning units removed. There was evidence that the absence of air conditioning or humidity controls during that period created conditions conducive to mold growth. The testing company found that mold had spread beyond the areas where it had been identified in the Hometest testing months earlier. The Pools hired a second remediation company, which re-remediated the house between October 2003 and January 2004.

In the meantime, in August 2003, the Pools filed their lawsuit. They named as defendants Allstate, Allstate adjusters Ted Mitchell and Clarence Driver, Hometest, and Galle.[1] The Pools complained of numerous actions by Allstate, its employees and agents, during the claims process. "During the claims process, Plaintiffs have been met with incompetence, delay, attrition and indifference all of which has resulted in additional damage to their residence and to them." This included not only disputes "concerning the scope of the remediation and build back covered by the insurance policy," but negligence and gross negligence in failing to timely and properly detect and repair the leaks and resultant water damage and remove the molds in Plaintiffs' home; in "failing to properly remove the molds, which mold contamination has now overtaken the home; and in failing to make the necessary arrangements to assure that such proper repairs were promptly

---

[1] The Pools originally named Galle, Inc., as well as Danny Galle and father Pat Galle. The individual Galle defendants were later non-suited at trial.

undertaken and completed." The Pools also complained that during this process, they "have been forced to vacate their Residence and live in rented quarters rather than their home."

The Pools pled that "[t]he Residence has been further damaged by the remediation and decontamination services of Galle" and that "Galle has failed to account for items of personal property and failed to comply with its contract for services." This noncompliance allegedly included failing to follow the "'Guidelines on Assessment And Remediation Of Fungi In Indoor Environments,' as published by the New York City, Department of Health." Thereafter, the Pools allege, Allstate retained "[a]n independent laboratory, Test Force . . . and their consultant completed clearance testing and issued a report stating the Residence is mold free when mold is still apparent on surfaces throughout the house. Allstate and Test Force refused to conduct surface testing as part of this 'clearance' testing even though Allstate has been shown that mold was apparent on many surfaces throughout the Residence."

The Pools pled that disputes continued with Allstate "concerning the scope of remediation and build back covered by the insurance policy." Among other things, the Pools complained that after the HVAC units in the house had been "completely removed at the direction of Allstate," "Ted Mitchell's build back estimate for the HVAC systems was inadequate [and] Ted Mitchell refused to employ air handling units and was unconcerned about the humidity problem and its conducive nature for a mold resurgence even though repeatedly informed of this fact and continuing problem by Joe Pool."

Against Allstate alone, the Pools asserted causes of action for violations of the DTPA and articles 21.21, 21.21-2, and 21.55 of the insurance code; bad faith; and fraud. The Pools further

5

asserted causes of action against both Allstate and Galle for breach of contract, and against all defendants for negligence and negligent misrepresentation. Regarding negligent misrepresentation, the Pools pled:

> Defendants made misrepresentations in the course of their business or in a transaction in which they had a pecuniary interest, Defendants supplied false information for guidance of Plaintiffs, Defendants did not exercise reasonable care or competence in obtaining or communicating the information, and Plaintiffs suffered pecuniary losses by justifiably relying on Defendants' misrepresentations. These misrepresentations were a producing/proximate case of Plaintiffs' damages, as set forth below.

As for damages, the Pools pled that "[a]s a direct and/or producing and/or proximate result of the acts and omissions of Defendants, Plaintiffs have suffered substantial actual damages." They added that "[a]s a further result of Defendants' acts and omissions, Plaintiffs have sustained substantial economic damages including but not limited to the value of their home, rental costs, and the cost to replace personal possessions, the reasonable and necessary cost to repair the house; and stigma damages, i.e., the loss of value of the house, because of the nature of the defects, even after the defects have been repaired; out-of-pocket expenditures reasonably made by Plaintiffs, and damages in an amount equaling the diminished value of the property." The Pools further sought "all actual damages for their personal injuries, property damages and other losses, in addition to economic damages, punitive and/or exemplary damages," including benefits payable under the Allstate policy; consequential damages resulting from Allstate's failure to comply with the policy terms; statutory penalties under the DTPA and articles 21.21, 21.21-2, and 21.55 of the insurance code; mental anguish; attorney's fees; expert witness fees and civil penalties under article 21.21-8 of the insurance code; and punitive and exemplary damages.

6

In August 2004, the Pools settled and released their claims against Allstate, Mitchell and Driver (the "Allstate Defendants") in exchange for a payment of $532,000.00. The Pools agreed to release:

> any and all liability now accrued, or hereafter to accrue, on account of any and all claims, including, but not limited to, damages for medical expenses past and future, physical pain, suffering and mental anguish past and future, physical impairment past and future, loss of earning capacity past and future, disfigurement past and future, property damage, bad faith, DTPA, Insurance Code violations, claims for mold, fungi or bacteria, water damage or any other damage to the contents of the home or structure of the home, claims for additional living expenses, claims as a result of the homeowners policy of insurance issued to Plaintiffs . . . which we, or anyone claiming through or under [the Pools], may now have, or may hereafter have against ALLSTATE TEXAS LLOYDS, ALLSTATE INSURANCE COMPANY, TED MITCHELL and CLARENCE DRIVER, and all other persons, firms and/or corporations whomsoever, in any way arising from, growing out of or in any way connected with any and all injuries, losses and/or damages of any nature and kind whatsoever, or claims now known, or that may hereafter develop as a consequence of any and all plumbing leaks which occurred on or about June 30, 2002 at [the Pool's house.]

Similarly, the Pools agreed that the release included:

> any and all claims, including, but not limited to, damages for medical expenses past and future, physical pain, suffering and mental anguish past and future, physical impairment past and future, loss of earning capacity past and future, disfigurement past and future and property damage, bad faith, DTPA, Insurance Code violations, claims for mold, fungi or bacteria, water damage or any other damage to the contents of the home or structure of the home, any foundation claims, claims for additional living expenses, claims as a result of the homeowners policy of insurance issued to Plaintiffs . . . asserted by the [Pools] in any suit against said Defendants, ALLSTATE TEXAS LLOYDS, ALLSTATE INSURANCE COMPANY, TED MITCHELL and CLARENCE DRIVER, as well as any and all claims, including, but not limited to, damages for medical expenses past and future, physical pain, suffering and mental anguish past and future, physical impairment past and future, loss of earning capacity past and future, disfigurement past and future and property damage, bad faith, DTPA, Insurance Code violations, claims for mold, fungi or bacteria, water damage or any

7

other damage to the contents of the home or structure of the home, any foundation claims, claims for additional living expenses, claims as a result of the homeowners policy of insurance issued to Plaintiffs . . ., demands and/or causes of action which might have been asserted by JOE POOL AND LESLIE POOL, their heirs, executors, administrators, agents, servants and employees, or anyone acting on their behalf.

The case proceeded to trial against Galle alone in 2007 on the Pools' original petition.[2] The Pools' evidence centered on representations Galle allegedly made regarding the company's qualifications and experience and the extent to which its work was consistent with these representations and its contractual obligations. The district court submitted theories of general negligence, negligent misrepresentation, and breach of contract. In the general negligence issue, the district court submitted the negligence of Galle, the Pools, "Allstate Insurance Co.," Hometest, and Test Force. The jury found that Galle and the Pools were negligent, and apportioned responsibility 60 percent to the Pools and 40 percent to Galle. Consequently, the jury did not award damages to the Pools on that theory.

The jury found that Galle made a negligent misrepresentation and awarded the following damages "proximately caused by such negligent misrepresentation": $44,000, "[t]he difference . . . between the value of what the POOLS have received in the transaction and the purchase price or value given"; and $170,400.58, "[t]he economic loss . . . otherwise suffered as a consequence of the POOLS' reliance on the misrepresentation."

The jury also found that Galle had failed to comply "with the agreement between it and the POOLS." It awarded the following damages "resulting from GALLE, INC.'s failure to

_____

[2] The parties represent that the other non-settling defendant, Hometest, had declared bankruptcy.

8

comply": $51,200 for "[t]he reasonable and necessary cost to remediate the POOLS' home and contents," $6,400 for "[t]he reasonable and necessary cost to rent an alternative home to live in and contents to use," zero for "[t]he reasonable and necessary moving costs," and $1,704 for "[t]he reasonable and necessary cost to store the POOLS's home's contents while the home was being remediated." The jury also awarded $82,111.37 in trial-level attorney's fees, and zero appellate attorney's fees.

At numerous times prior to, during, and after trial, Galle had requested the district court to apply a credit in the amount of the Allstate settlement against the Pools' theories of recovery. The district court refused to apply the credit to either the Pools' breach of contract or negligent misrepresentation theories of recovery. However, the court did require the Pools to elect between those theories of recovery. The Pools elected the negligent misrepresentation theory, and the district court rendered its judgment based on the jury's liability finding and award.

On appeal, Galle contends that the district court erred in refusing to apply the Allstate settlement credit against the Pools' negligent misrepresentation theory of recovery or their alternative theory of breach-of-contract.[3] Galle had the initial burden of proving its entitlement to the settlement

---

[3] Galle phrases its challenge in terms of whether the district court "abused its discretion" in refusing to apply the settlement credit. Some of our sister courts have suggested that an abuse-of-discretion standard may apply where there are factual disputes concerning allocation of a settlement amount. *See, e.g.*, *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 326 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). However, it remains that, under any review standard, we review questions of law de novo. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion."). Here, our analysis of the settlement credit turns on questions of statutory construction, construction of the settlement agreement, and application of legal principles that do not involve questions of disputed facts. We review such legal questions de novo.

credit. *See Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998). As for the negligent misrepresentation theory, Galle relies on chapter 33 of the civil practice and remedies code. The current version of chapter 33, as amended in 2005, applies in suits within its scope that were tried on or after June 9, 2005. Act of May 27, 2005, 79th Leg., R.S., ch. 277, 2005 Tex. Gen. Laws 770, 771 (effective June 9, 2005). The Pools' suit was tried in 2007. Chapter 33 governs settlement credits with respect to "any cause of action based on tort in which a defendant . . . is found responsible for a percentage of the harm for which relief is sought." Tex. Civ. Prac. & Rem. Code Ann. § 33.002(a)(1) (West 2008). The Pools' negligent misrepresentation cause of action is based on tort, for which Galle, a defendant, was found wholly responsible. *See id.* Regarding settlement credits, section 33.012 requires that "[i]f the claimant has settled with one or more persons, the court shall," after any reductions based on proportionate responsibility, "further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amount of all settlements." *Id*. § 33.012(b) (West 2008). Although chapter 33 does not define "settle" or "settlement," it does define a "settling person" as "a person who has . . . paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability with respect to the personal injury, property damage, death or other harm for which recovery of damages is sought." *Id.* § 33.011(5) (West 2008). Read together, these provisions contemplate that chapter 33 applies if the Pools were compensated in the Allstate settlement for the same harm for which they sought recovery against Galle.

Through its negligent misrepresentation claim, the Pools sought recovery from Galle for the same harm for which they had sought recovery from Allstate. In their live pleadings at the

10

time of trial, the Pools asserted a common cause of action for negligent misrepresentation against all "Defendants" collectively. Similarly, the Pools also sought several overlapping categories of damages against all "Defendants," including, "actual damages" and, "[a]s a further result of Defendants' acts and omissions, . . . substantial economic damages including but not limited to the value of their home, rental costs, and the cost to replace personal possessions, the reasonable and necessary cost to repair the house; and stigma damages, i.e., the loss of value of the house, because of the nature of the defects, even after the defects have been repaired; out-of-pocket expenditures reasonably made by Plaintiffs, and damages in an amount equaling the diminished value of the property."

Furthermore, the damage elements that the jury awarded the Pools under their negligent misrepresentation theory—the difference between "the value of what the POOLS have received in the transaction and the purchase price or value given" and "[t]he economic loss . . . otherwise suffered as a consequence of the POOLS' reliance on the misrepresentation"—were damages that the Pools had pled jointly against all "Defendants." These findings likewise were based at least in part on evidence that there was proliferating mold in the Pools' house and on their personal possessions following Galle's remediation work. The Pools alleged that both Galle and Allstate jointly caused or contributed to this harm, Allstate by actions including "failing to timely and properly detect and repair the leaks and resultant water damage and remove the molds in Plaintiffs' home; in failing to properly remove the molds, which mold contamination has now overtaken the home; and in failing to make the necessary arrangements to assure that such proper repairs were promptly undertaken and completed." In particular, the Pools complained that during

11

the months after Galle's work had ended, Ted Mitchell's actions contributed to a "humidity problem and its conducive nature for a mold resurgence even though repeatedly informed of this fact and continuing problem by Joe Pool." In these ways, the Pools sought recovery from Galle and Allstate for a common harm—mold in the Pools' house following Galle's work there. *See Osborne v. Jauregui*, 252 S.W.3d 70, 73, 76-78 (Tex. App.—Austin 2008, pet. filed) (en banc). Accordingly, chapter 33 applies.

As the non-settling defendant seeking to obtain the benefit of the settlement credit, Galle had the burden of proving the settlement amount, which it could meet by placing the settlement agreement or some evidence of the settlement amount in the record. *See Ellender*, 968 S.W.2d at 927. Galle clearly met this burden. It filed a written notice—almost two years before trial—advising the district court that Allstate had paid the Pools $532,000.00 in settlement of the Pools' claims against Allstate and its employees and agents. Galle attached to its notice a copy of the settlement agreement. Galle also raised the settlement credit issue numerous additional times before, during, and after trial, including in objections to the Pools' proposed judgment on the verdict and a motion to modify judgment.

Galle having met its burden, the burden shifted to the Pools to prove the extent to which the settlement amount had been allocated to separate damages paid by Allstate, as opposed to joint or common damages. *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 391-92 (Tex. 2000); *Ellender*, 968 S.W.2d at 928-29. In concept, a non-settling defendant "is entitled to a credit for any settlement amount representing joint damages," but "not for any amount of separate or punitive damages paid by the settling defendant." *Casteel*, 22 S.W.3d at 391-92. However, the

12

plaintiff has the "burden to offer evidence allocating the settlement amount between actual damages, for which [the settling and non-settling defendants] were jointly liable, and additional damages, for which only the [settling] defendant was liable, in order to limit the credit" to the latter. *Id.* at 392. Otherwise, it is presumed that the settlement amount represented joint damages. *See id.*

The Pools urge that the Allstate settlement agreement encompassed claims that were purely "contractual and statutory" and compensated them solely for damages "sustained at their house in 2002 due to the plumbing leaks and . . . to which they were potentially entitled to as a result of claims of Allstate's violations of various applicable statutes." Similarly, the Pools contend that the collateral source rule precludes the district court's application of the settlement credit here because their settled claims concerned only benefits to which the Pools were entitled under the policy.[4] However, the settlement agreement is much broader, extending to claims "in any way arising from, growing out of or in any way connected with any and all injuries, losses and/or damages of any nature and kind whatsoever, or claims now known, or that may hereafter develop as a consequence of any and all plumbing leaks which occurred on or about June 30, 2002 at

---

[4] The Pools also urge that they can sue Galle, notwithstanding the settlement credit, because the settlement agreement contains language whereby Allstate waived its right to subrogation as to any claims the Pools might have against other parties or potential parties, and the Allstate Defendants assigned any claims they might have as a consequence of claims or potential claims asserted against them "as a result of losses" at the Pools' house. What the Pools seem to suggest is that they now stand in the shoes of the Allstate Defendants with respect to a contribution claim they never asserted against Galle arising from the Pools' claims against them. To the contrary, the settlement of the Pools' claims against the Allstate defendants extinguished any potential contribution claims by those parties. *See Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987) (contribution claim by settling tortfeasor against non-settling parties prohibited); *see also Jackson v. Freightliner Corp.*, 938 F.2d 40, 41-42 (5th Cir. 1991) (Texas law) (settling tortfeasor cannot assign plaintiff his rights of contribution and indemnity against a joint tortfeasor).

[the Pools' house]." The settlement agreement thereby encompasses the Pools' claims for recovery for damages that they alleged Allstate and Galle jointly caused, such as those relating to the failure to prevent, contain, or remediate mold.

Although it is theoretically possible that some of the damages the Pools sought to recover against Allstate and for which they were compensated in the settlement agreement may have been separate rather than joint, it was the Pools' burden to offer evidence allocating the settlement between actual damages for which only Allstate was liable and those for which Allstate and Galle were jointly liable, in order to limit the credit to the former. *Casteel*, 22 S.W.3d at 391-92. They failed to do so. Consequently, the district court was required to apply the full amount of the settlement credit against the jury's award of negligent misrepresentation damages. Further, because the amount of the settlement credit exceeds the amount of the jury's award of negligent misrepresentation damages, we must reverse the district court's judgment awarding the Pools damages under that cause of action and render judgment that they take nothing on that theory.

Galle also contends that the district court was obligated to apply the settlement credit against the jury's award of damages under the Pools' breach of contract cause of action. Galle relies on the common-law "one-satisfaction" rule. In cases where chapter 33 or another settlement credit scheme does not apply, the "one-satisfaction" rule may require a trial court to reduce a damage recovery based on a settlement. The one-satisfaction rule is "the longstanding proposition that a plaintiff should not be compensated twice for the same injury." *Osborne*, 252 S.W.3d at 75 (citing *CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 683 (Tex. App.—Austin 2005, no pet.) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) and *Casteel*,

14

22 S.W.3d at 390)). The rule guards against a plaintiff receiving a windfall "by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed. The plaintiff would otherwise be recovering an amount greater than the trier of fact has determined would fully compensate for the injury." *Id.* (citing *First Title Co. v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993)). The one-satisfaction rule applies both when several defendants commit the same act and when multiple defendants commit "technically different acts" that result in the same, single injury. *Id.* (citing *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Casteel*, 22 S.W.3d at 390)). The application of the rule is not limited to tort claims, and whether the rule may be applied depends not on the cause of action asserted but rather the injury sustained. *Id*. (citing *El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex. 1993) and *Stewart Title*, 822 S.W.2d at 8). Thus, if the plaintiff has suffered only one injury, even if based on "overlapping and varied theories of liability," the plaintiff may only recover once; "[t]his is especially true if the evidence supporting each cause of action is the same." *Id*. (quoting *Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 590 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

The Pools pled that "Defendant Galle has breached its contract with Plaintiffs by performing remediation and re-build efforts that did not fulfill the obligations of the contract with Plaintiffs." The Pools further alleged that "Defendant Galle expressly and impliedly warranted to Plaintiffs that their services would be of good workmanlike quality. Defendant breached those warranties. The warranties were relied upon by Plaintiffs to their detriment, thus causing Plaintiffs' damages, as more fully set forth below." The Pools, as previously discussed, sought several

15

overlapping categories of damages as to all "Defendants." The jury awarded breach-of-contract damages to the Pools representing the costs to re-remediate the Pools' home and contents resulting from Galle's failure to comply with the contract, the reasonable and necessary cost to rent an alternative home to live in and contents to use resulting from Galle's failure to comply with the contract, and the reasonable and necessary cost to store the Pools' home's contents while the home was being remediated resulting from Galle's failure to comply with the contract. These damages overlap with those the Pools sought against Allstate, which included "rental costs, and the cost to replace personal possessions, the reasonable and necessary cost to repair the house . . . [and] out-of-pocket expenditures reasonably made by Plaintiffs." Furthermore, these damages, like the negligent misrepresentation damages the jury awarded, were based on pleadings and evidence of a common harm or injury of proliferating mold in the Pools' house following Galle's work there. *See Osborne*, 252 S.W.3d at 73, 76-78. Consequently, under the one-satisfaction rule, Galle was entitled to a credit for the Allstate settlement unless the Pools could meet their burden of presenting evidence allocating the settlement amounts to separate rather than joint damages. *Casteel*, 22 S.W.3d at 391-92. Because they failed to do so, the entire settlement amount must be applied against the jury's breach-of-contract award. Because the settlement amount exceeds the amount of the damage award, the Pools must take nothing on their breach-of-contract theory.

We accordingly sustain Galle's issue, reverse the district court's judgment, and render judgment that the Pools take nothing on their claims against Galle.

16

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Reversed and Rendered

Filed:   August 29, 2008

17