NO. 07-04-0084-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 18, 2006
_____

B.T. HEALTHCARE, INC. d/b/a BENDER TERRACE,

Appellant

v.

THURMAN HONEYCUTT, as executor and representative
of the estate of RONALD HONEYCUTT,

Appellee
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-516,937; HON. ANDREW J. KUPPER, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

B.T. Healthcare, Inc. d/b/a Bender Terrace (Bender) appeals from a judgment after a jury trial in favor of Thurman Honeycutt, as executor and representative of the estate of his brother Ronald Honeycutt (Honeycutt). In four issues, Bender argues that 1) the trial court erred by failing to apply the applicable settlement credit, 2) the trial court erred by failing to include IHS Lubbock in the court's jury charge "for purposes of determining percentages of responsibility," 3) the evidence was legally and factually insufficient to

support the award of medical expenses, and 4) the evidence was legally and factually insufficient to support the award for pain and suffering. We reverse the judgment and remand the cause.

### *Background*

In June 2000, Honeycutt was rendered a quadriplegic at the age of 50 after falling and hitting his head against a vehicle. Upon receiving treatment for a broken neck at Covenant Medical Center, he was transferred to IHS Lubbock (a nursing home) in August 2000. Approximately a month later, he was transferred to Bender, another nursing home. According to the record, Honeycutt had suffered from pressure (bed) sores since his injury. They grew in number and severity while at Bender. This resulted in his return to Covenant Medical Center in early November of 2000 for treatment. Honeycutt never returned to Bender but was instead sent to other homes.

Honeycutt sued, on July 1, 2002, Bender and IHS Lubbock. IHS Lubbock settled with Honeycutt before trial for $295,000. The settlement was executed by its parties in January of 2003. This left Bender as the sole defendant. Moreover, a jury found it 51% negligent for Honeycutt's injuries, while Honeycutt was found 49% negligent. So too did it award Honeycutt $350,000 for pain and suffering and $180,000 in medical expenses. Based upon the award and percentages of responsibility, the trial court entered judgment ordering Bender to pay Honeycutt $270,300 in damages, plus interest, and costs.

### *Issue One - Settlement Credit*

Bender initially contends that the trial court erred in failing to give it credit for the settlement amount ($295,000) paid by the IHS defendants. We sustain the issue.

2

The matter before us is reviewed under the standard of abused discretion. *Tex. Capital Sec. v. Sandefer,* 108 S.W.3d 923, 925 (Tex. App.–Texarkana 2003, pet. denied). Next, and at the time Honeycutt settled with IHS Lubbock, statute required a trial court to deduct from a claimant's recovery, a sum equal to the claimant's percentage of responsibility for his own injuries. TEX. CIV. PRAC. & REM. CODE ANN. §33.012(a) (Vernon Supp. 2005). Also included in §33.012 was another provision requiring a reduction in the claimant's recovery from the remaining defendants when one or more defendants settled. The amount of credit was susceptible to calculation under various formulas which the non-settling defendant had the option to select. The formula chosen by Bender entitled it to a credit equal to "the sum of the dollar amounts of all settlements." *Id.* §33.012(b) (describing the options).

To receive the credit, Bender had the burden to prove its entitlement to same. *See Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002) (stating that a defendant seeking a settlement credit has the burden to prove its right to it). Yet, this burden was and is not a difficult one. Indeed, to obtain a dollar-for-dollar credit, it had only to elect same in writing before the cause was submitted to the factfinder and assure that the record disclosed the settlement amount. *Id.* Upon Bender doing that, Honeycutt had the obligation to show that certain amounts should not be credited because of the allocation in the settlement agreement between damages susceptible to credit from those which were not. *Id.* In other words, he had the burden to tender a valid settlement agreement allocating the settlement monies between those subject to use as a credit and those not so subject. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 928 (Tex. 1998) (holding that the settling party must tender to the trial court a settlement agreement allocating between actual and punitive damages

3

as a condition precedent to limiting dollar-for-dollar settlement credits to settlement amounts representing actual damages).  Should he fail in this regard, then the non-settling party is entitled to a credit equaling the entire settlement amount.  *Id.*

Here, the settlement agreement executed by Honeycutt and IHS Lubbock did not expressly segregate funds to be excluded in the calculation of the credit from those to be included.  Honeycutt posits that the agreement nonetheless satisfies the requirements of *Ellender* because it demarcates the particular causes of action being settled and those causes relate solely to the acts of IHS Lubbock.  We concede that while the better practice may be to expressly specify the division contemplated in *Ellender*, no magic words are necessary if the agreement nevertheless can be construed as having that effect.  Yet, the wording of the document at bar cannot be so construed.

In defining the misfeasance or malfeasance encompassed by the settlement, the parties wrote:

> Nursing treatment and services rendered or the failure to render medical and nursing care and treatment to Ronald Honeycutt in connection with his residency at IHS Acquisition No. 172, Inc. d/b/a IHS Hospital at Lubbock and IHS Acquisition No. 142, Inc. d/b/a IHS At The Park a/k/a IHS of Plano; medical and nursing care and treatment rendered by or the failure to render medical and nursing care and treatment by any employee or agent of any Released Party (as that term is defined herein); and claims brought or that could have been brought, events described in and issues related in any way to the lawsuit styled  *Thurman Honeycutt, As Executor and Representative of the Estate of Ronald Honeycutt v. Integrated Health Services, Inc., IHS Acquisition No. 172, Inc. d/b/a IHS Hospital at Lubbock, B.T. Health Care, Inc. d/b/a Bender Terrace, Damon H. Hill, Jr., M.D., and IHS Acquisition No. 142, Inc. d/b/a IHS At The Park a/k/a IHS of Plano;* Cause No. 2002-516,937; in the 99[th] Judicial District Court of Lubbock County, Texas.

Admittedly, the first two passages ending with a semi-colon can be read as restricting the scope of the settlement to those bed sores and like injuries caused solely by the conduct

of IHS Lubbock and its personnel.[1]  Yet, we cannot ignore the following passage wherein the parties generally referred to the "claims brought or that could have been brought, events described in and issues related in any way to the lawsuit styled *Thurman Honeycutt . . . v. Integrated Health Services, Inc. . . . B.T. Health Care, Inc. d/b/a Bender Terrace . . .Cause No. 2002-516,937.*"  Unlike the former passages, the latter is not restricted simply to employees and agents of IHS Lubbock or injuries relating to his residency at the IHS Lubbock facility.  Rather, its scope is defined by the claims and issues involved in the suit against all the defendants.  Moreover, through Honeycutt's live pleading at the time of the settlement, he had expressly sought to hold all the defendants jointly and severally liable for his injuries.

Given the wording of the agreement, its allusion to all the claims and issues implicated in the suit generally, and Honeycutt's effort to hold all defendants jointly and severally liable, it cannot be said that the settlement agreement sufficiently allocated the monies paid by IHS Lubbock to injuries solely caused by IHS Lubbock or its agents and employees.  Thus, as the agreement is written, Honeycutt failed to carry his burden as imposed by *Ellender*, and the trial court abused its discretion in refusing to credit the $295,000 settlement amount against the jury verdict.

### *Issue Two - Comparative Negligence Instruction*

---

[1]We note that in his live pleading Honeycutt described how some of the sores could not have been caused by IHS Lubbock because they did not come into existence until he was transferred to Bender.

Bender next argues that the trial court should have submitted the negligence of IHS Lubbock to the jury.  This allegedly would have allowed the factfinder to assign responsibility for Honeycutt's injuries between all involved.  We overrule the issue.

To the extent that a non-settling defendant is entitled to have a settling defendant's responsibility determined by a jury, there must, at the very least, be some evidence establishing that the settling defendant was indeed responsible for the injuries.  *Kroger Co. v. Betancourt,* 996 S.W.2d 353, 358 (Tex. App.–Houston [14th Dist.] 1999, pet. denied).  In other words, evidence must appear of record illustrating that IHS Lubbock had a duty to act according to a certain standard of care, that it breached the duty, and that the breach was a substantial factor in causing the injury for which damages were sought.  *See Schneider v. Haws,* 118 S.W.3d 886, 889 (Tex. App.–Amarillo 2003, no pet.) (describing the elements of a healthcare liability claim); *see also Columbia Medical Center of Las Colinas v. Bush,* 122 S.W.3d 835, 852 (Tex. App.–Fort Worth 2003, pet. denied) (stating that causation is established when the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred).

While Bender cites us to evidence suggesting that IHS Lubbock or its employees may have violated an applicable standard of care, it cites us to none suggesting that the violations proximately caused the injuries for which recovery was sought from Bender.  For instance, while a nurse testified that personnel of  IHS Lubbock breached the standard of care required of them, we are not cited to any evidence showing that the purported injuries, if any, caused by the breach were the ones underlying Honeycutt's claim against Bender.  This distinction is of import for the allegations against Bender in Honeycutt's live pleading illustrate that he was seeking from Bender damages for injuries caused by Bender while

6

he was solely in its care. Thus, it was incumbent upon Bender to direct us to some evidence sufficient to support a finding that the acts or omissions of IHS Lubbock were somehow a substantial factor in causing those particular injuries. *Most Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex. App.–Dallas 1987, writ ref'd n.r.e.) (requiring the appellant to cite to those portions of the record that support its argument). Since it did not, and because it is not our duty to peruse the 17 volume reporter's record for that information, *Barnett v. Coppell N. Texas Court, Ltd.,* 123 S.W.3d 804, 817 (Tex. App.–Dallas 2003, pet. denied) (holding that an appellate court has no duty to *sua sponte* review the record to find evidence supporting the appellant's argument), Bender failed to establish that the trial court abused its discretion in denying the submission in dispute.

### Issue Three - Sufficiency of Evidence of Medical Expenses

Bender next argues that the evidence was legally and factually insufficient to support the jury's $180,000 award of medical expenses. This is so, it contends, because the $180,000 included medical expenses unrelated to recompensing the injuries caused by Bender. In other words, Honeycutt allegedly was obligated to segregate those medical expenses incurred in treating the bed sores caused by Bender from those incurred due to the treatment of other ailments unrelated to Bender's misfeasance or malfeasance. We sustain the issue.

One cannot legitimately question that a defendant generally is liable only for those medical expenses incurred incident to his misconduct. For this reason, a plaintiff may recover only for reasonable and necessary medical expenses specifically shown to result from treatment made necessary by the negligent acts or omissions of the defendant, *Linan*

7

*v. Rosales,* 155 S.W.3d 298, 306 (Tex. App.–El Paso 2004, pet. denied); *see Walker v. Ricks,* 101 S.W.3d 740, 747 (Tex. App.–Corpus Christi 2003, no pet.) (stating that there must be a nexus between the injury and the medical expenses). And, the presentation of medical bills alone does not establish that link. *Smith v. Southwestern Bell Tel. Co.,* 101 S.W.3d 698, 702 (Tex. App.–Fort Worth 2003, no pet.).

Here, evidence appears of record disclosing that the reasonable and necessary medical expenses relating to the treatment of Honeycutt's bed sores were included in the $180,000 sum. However, the testimony failed to illustrate that the entire sum was comprised of such expenses. Indeed, in addition to the pressure sores, appellant suffered from pneumonia and a urinary tract infection when admitted into and securing treatment from the hospital. So too did he suffer from diabetes, chronic obstructive pulmonary disease, ankylosing spondylosis, and an arthritic condition. Moreover, in the medical expenses were included such items as the cost of glucose sticks, chest and shoulder x-rays, nebulizer treatments, a hot/cold pack for physical therapy, speech therapy, a nutrition consultant, occupational therapy, and air fluidize therapy. According to Bender, no evidence illustrates that these expenses were related to the treatment of Honeycutt's sores, and we agree. Because the evidence showed that there were multiple conditions to be treated but no evidence segregates the expenses incurred in treating the conditions caused by Bender from those that were not, the cause must be remanded for further proceedings. *See Texarkana Memorial Hospital v. Murdock,* 946 S.W.2d 836, 840 (Tex. 1997) (remanding the cause for new trial because the record failed to contain evidence segregating past medical expenses arising from the conduct of the hospital from those unrelated to that conduct).

### *Issue Four - Sufficiency of the Evidence as to Pain and Suffering*

In its final issue, Bender challenges the legal and factual sufficiency of the evidence underlying the jury's award for pain and suffering. We overrule the issue.

Only pain consciously suffered and experienced is compensable. *SunBridge Healthcare Corp. v. Penny,* 160 S.W.3d 230, 248 (Tex. App.–Texarkana 2005, no pet.); *Lee Lewis Construction, Inc. v. Harrison,* 64 S.W.3d 1, 14 (Tex. App.–Amarillo 1999), *aff'd,* 70 S.W.3d 778 (Tex. 2001). Furthermore, its existence may be established by circumstantial evidence, *SunBridge Healthcare Corp. v. Penny,* 160 S.W.3d at 248, or inferred or presumed as a consequence of severe injuries. *Lee Lewis Construction, Inc. v. Harrison,* 64 S.W.3d at 14. And though not unbridled, a jury's discretion in considering the evidence and arriving at a justifiable sum is great. *Lee Lewis Construction, Inc. v. Harrison,* 64 S.W.3d at 14. With this in mind, we turn to the evidence in question.

Here, Bender alleges that the location of Honeycutt's quadriplegia rendered him unable to experience any pain caused by the pressure wounds. Yet, evidence appears of record illustrating that quadriplegics indeed may "have deep primitive sensations through their autonomic nervous system. . . ." So too could they generally, and Honeycutt in particular, "feel a deep pain, or nausea, or have other symptoms" caused by wounds. Additionally, it was noted that Honeycutt's chief complaint appearing on the hospital admission form was "[b]uttock pain," and one physician interpreted this as meaning that Honeycutt was experiencing pain from his pressure ulcers. Other evidence disclosed that on November 8, 2000, Honeycutt was transferred to the emergency room for treatment of

9

"decubes" and that he was in a lot of pain due to "decubes."[2] Furthermore, Honeycutt's brother testified that family members would try to reposition Honeycutt but they could not touch him around "any of the sore areas" without him uttering "an excruciating scream." Also of record is evidence that he experienced pain when moved or turned. When taken together, this data constitutes more than a scintilla of evidence upon which a rational jury could reasonably reject Bender's hypothesis about a quadriplegic's inability to experience pain and conclude that Honeycutt actually did. So, we find that the award for pain and suffering is supported by legally sufficient evidence. And, to the extent that other evidence contradicted the foregoing, it was for the jury to resolve the conflict. It having done so in favor of Honeycutt, we cannot say that the determination was or is against the great weight and preponderance of the evidence so as to be manifestly unjust.

Having sustained issue three, we reverse the judgment and remand the entire cause for new trial. TEX. R. APP. P. 44.1(b) (barring an appellate court from ordering a separate trial solely on unliquidated damages if liability is contested); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001) (holding that the entire cause must be remanded if liability was contested at trial but not on appeal); *see Texarkana Memorial Hospital v. Murdock,* 946 S.W.2d 840 (reversing the entire cause because recoverable medical expenses were not segregated from unrecoverable expenses).


Brian Quinn
Chief Justice

---

[2]A decubitus ulcer is a bedsore.

10