ACCEPTED
03-14-00518-CV
6708789
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/28/2015 4:18:06 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00518-CV

IN THE COURT OF APPEALS
THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/28/2015 4:18:06 PM
JEFFREY D. KYLE
Clerk

JAMES POE AND SENIOR RETIREMENT PLANNERS, LLC, Appellants

vs.

EDUARDO S. ESPINOSA, IN HIS CAPACITY AS RECEIVER OF
RETIREMENT VALUE, LLC, Appellee

Appeal from the 200th Civil District Court of
Travis County, Texas (Hon. Gisela Triana presiding)

APPELLANTS' REPLY BRIEF

Respectfully submitted,

**ALDRICH PLLC**

Scott Lindsey
State Bar No. 24036969
1130 Fort Worth Club Tower
777 Taylor Street
Fort Worth, Texas 76102
Telephone:  817-336-5601
Facsimile:  817-336-5297
slindsey@aldrichpllc.com

**ATTORNEY FOR APPELLANTS**

**APPELLANTS REQUEST ORAL ARGUMENT**

# TABLE OF CONTENTS

I.    INDEX OF AUTHORITIES ................................................................. iv

II.   STATEMENT OF FACTS ................................................................1

III.  ARGUMENT ..................................................................................1

**Issue One:** Proper application of the one-satisfaction rule required that the trial court grant Appellants a settlement credit for unallocated settlement proceeds of $5.5 million. Because Appellants were found liable for an amount less than the unallocated settlement proceeds, the trial court erred, as a matter of law, by failing to render a take-nothing judgment in Appellants' favor.

    A.    Standard of Review ....................................................................1

    B.    Espinosa Did Not Meet His Burden under *Ellender*....................2

    C.    The Settlement Agreement Does Not Allocate..........................4

    D.    Espinosa Sued the James Defendants for All Damages...........7

    E.    James Defendants' Liability Never Adjudicated ........................8

    F.    Espinosa's Capacity Argument ...............................................10

    G.    Conclusion................................................................................11

**Issue Two:** The trial court abused its discretion by overruling Appellants' objections to Espinosa's summary judgment Evidence....................................................................................13

**Issue Three:** The trial court erred by rendering summary judgment for Espinosa on his TUFTA claim against Appellants because Espinosa lacked standing and because genuine issues of material fact existed for at least one element of each of Espinosa's TUFTA theories.

    A.    Espinosa's Summary Judgment Evidence..............................14

    B.    Creditor Claims.........................................................................15

    C.    Actual Intent .............................................................................18

    D.    Insolvency and Remaining Assets ..........................................20

IV.  PRAYER....................................................................................23

V.   CERTIFICATE OF COMPLIANCE ................................................... 25

VI.  CERTIFICATE OF SERVICE ......................................................... 25

VII. APPELLANTS' APPENDIX ............................................................ 26

# INDEX OF AUTHORITITES

## Cases

1.  *B.T. Healthcare, Inc. v. Honeycutt*,
    196 S.W.3d 296 (Tex.App.—Amarillo 2006, no pet.) ...............6

2.  *Buccaneer Homes of Alabama, Inc. v. Pelis,*
    43 S.W.3d 586 (Tex. App.—Houston [1st Dist.] 2001, no
    pet.) ......................................................................8

3.  *Camden Machine & Tool, Inc. v. Cascade Co.*,
    870 S.W.2d 304 (Tex.App.—Fort Worth 1993, no writ) ...........15

4.  *Christus Health v. Dorriety*,
    345 S.W.3d 104 (Tex. App.—Houston [14th Dist.] 2011,
    pet. denied) ...............................................................11

5.  *Cohen v. Arthur Anderson, L.L.P.*,
    106 S.W.3d 304 (Tex. App.—Houston [1st Dist.] 2003, no
    pet.) ....................................................................2, 8

6.  *Crown Life Ins. Co. v. Casteel*,
    22 S.W.3d 378 (Tex. 2000)....................................2, 9

7.  *Dalworth Restoration, Inc. v. Rife-Marshall*,
    433 S.W.3d 773 (Tex. App.—Fort Worth 2014, pet.
    dism'd)..................................................... 8, 10, 11, 12

8.  *Flores v. Robinson Roofing & Constr. Co.*,
    161 S.W.3d 750 (Tex.App.—Fort Worth 2005, pet. denied)....16

9.  *Galle, Inc. v. Pool*,
    262 S.W.3d 564 (Tex. App.—Austin 2008, pet.
    denied) .......................................... 1, 3, 4, 9, 11, 12

10. *Genie Indus. v. Matak*,
    462 S.W.3d 80 (Tex.App.—Corpus Christi 2012).....................6

11. *Goose Creek Consol. Indep. Sch. Dist. of Chambers v. Jarrar's
    Plumbing*, 74 S.W.3d 486 (Tex. App.—Texarkana 2002,
    pet. denied) .................................................................9, 12

12. *Great AM. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41 (Tex. 1965) ...............................................21

13. *Howard v. Rayco Steel, Ltd.,* No. 04-11-00521-CV, 2012 Tex. App. LEXIS 8174 (Tex.App.—San Antonio Oct. 3, 2012, no pet.) (mem. op.).....16

14. *Imperial Lofts, Ltd. v. Imerial Woodworks, Inc.,* 245 S.W.3d 1 (Tex.App.—Waco 2007, pet. denied) .............4, 5

15. *LJ Charter, L.L.C. v. Air Am. Jet Charter, Inc.,* No. 14-08-00534-CV, 2009 Tex. App. LEXIS 9469 (Tex.App.—Houston [14th Dist.] Dec. 15,2009, pet. denied) (mem. op.) ...............................................................2, 5

16. *Lundstrom v. United Servs. Auto. Ass'n,* 192 S.W.3d 78 Tex.App.—Houston [14th Dist.] 2006, pet. denied) ...............................................................5, 6

17. *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917 (Tex. 1998)....................................2, 3, 11, 12

18. *Osborne v. Jauregui, Inc.,* 252 S.W.3d 70 (Tex. App.—Austin 2008, pet. denied) (op. on reh'g) (en banc) ...................................................................8

19. *Ramsey v. Spray,* No. 02-08-00129-CV, 2009 Tex. App. LEXIS 9737 (Tex.App.—Fort Worth Dec. 23, 2009, pet. denied) (mem. op.) ..........................................................................................4

20. *Renfro v. Cavazos,* No. 04-10-00617-CV, 2012 Tex. App. LEXIS 1230 (Tex.App.—San Antonio Feb. 15, 2012, pet. denied) (mem. op.) ...........................................................................15

21. *Reservoir Sys. v. TGS-NOPEC,* 335 S.W.3d 297 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ........................................................................11

22. *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217 (Tex. 1999)...............................................23

23. *Rogers v. Ricane Enterprises, Inc.,*
    772 S.W.2d 76 (Tex. 1989).....................................................15

24. *State Farm Fire & Cas. Co. v. S.S.,*
    858 S.W.2d 374 (Tex. 1993)..............................................18, 19

25. *Stiles v. Resolution Trust Corp.,*
    867 S.W.2d 24 (Tex. 1993) ....................................................16

26. *United Blood Servs. v. Longoria,*
    938 S.W.2d 29 (Tex. 1997).....................................................13

27. *Walker v. Packer,*
    827 S.W.2d 833 (Tex.1992)......................................................2

28. *Waller v. Pidgeon,*
    No. 3:06-CV-0506-D, 2008 U.S. Dist. LEXIS 44238 (N.D.
    Tex. June 5, 2008) (mem. op.)................................................22

29*. Wein v. Sherman,*
    No. 03-10-00499-CV, 2013 Tex. App. 10666 (Tex. App.—
    Austin Aug. 23, 2013, no pet.) (mem. op.) ................................1

30. *Williams v. Performance Diesel,*
    No. 14-00063-CV, 2002 Tex. App. LEXIS 2735
    (Tex.App.—Houston [14th Dist.] Apr. 18, 2002, no pet.) .........17

## Statutes

1. Tex. Bus. & Com. Code Ann. § 24.005 .........................16, 17, 19, 20
2. Tex. Bus. & Com. Code Ann. § 24.006 .............................16, 17, 20

## Rules

1. Tex. R. Civ. P. 166a...............................................................15

Appellants James Poe and Senior Retirement Planners, LLC (collectively, "Poe") respond to Appellee Eduardo Espinosa's Brief as follows:

## STATEMENT OF FACTS

Poe disputes that Espinosa's statement of facts accurately represents the factual matters before the trial court in the summary judgment record, particularly because of the applicable summary judgment standard of review and Espinosa's failure to rely on that evidence in the trial court.

## ARGUMENT

**Issue One: Proper application of the one-satisfaction rule required that the trial court grant Appellants a settlement credit for unallocated settlement proceeds of $5.5 million. Because Appellants were found liable for an amount less than the unallocated settlement proceeds, the trial court erred, as a matter of law, by failing to render a take-nothing judgment in Appellants' favor.**

## A.    Standard of Review

When there are no disputed fact questions affecting the settlement credit analysis, this Court applies a de novo standard of review. *See Galle, Inc. v. Pool*, 262 S.W.3d 564, 571 n.3 (Tex. App.—Austin 2008, pet. denied); *see also Wein v. Sherman*, No. 03-10-00499-CV, 2013 Tex. App. 10666, at *37-38 (Tex. App.—Austin Aug. 23, 2013, no pet.) (mem. op.). Espinosa did not identify any factual disputes that would require application

1

of an abuse of discretion standard.  Regardless, a "trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

**B.**  **Espinosa Did Not Meet His Burden under *Ellender***

The nonsettling defendant has the initial burden of proving his entitlement to a settlement credit, which the nonsettling defendant meets by "placing the settlement agreement or some evidence of the settlement amount in the record."  *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998).  The burden then shifts to the plaintiff to show that it will not receive a double recovery.  *Id.* at 928.  To meet this burden, the plaintiff must "tender a valid settlement agreement allocating the settlement between (1) damages for which the settling and nonsettling defendant are jointly liable, and (2) damages for which only the settling party was  liable." *Cohen v. Arthur Anderson, L.L.P.*, 106 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 392 (Tex. 2000)).  If the settlement covers damages for which no other defendant could be liable and the settlement agreement allocates the proceeds to apply only to the sole liability damages, the trial court should not apply a settlement credit.  *See LJ Charter, L.L.C. v. Air Am. Jet Charter, Inc.*, No. 14-08-00534-CV, 2009 Tex. App. LEXIS 9469, at *27-28

2

(Tex. App.—Houston [14th Dist.] Dec. 15, 2009, pet. denied) (mem. op.). On the other hand, if there is no allocation within the settlement agreement, the nonsettling defendant is entitled, as a matter of law, to a credit for the entire settlement amount. *Ellender*, 968 S.W.2d at 928; *Galle*, 262 S.W.3d at 573.

Espinosa does not dispute the applicability of this burden-shifting framework, nor does Espinosa contend that Poe failed to meet his initial burden. Moreover, Espinosa readily admits, as he must, that he sought joint liability against the James Defendants for some claims but not others. [Appellee's Brief pp. 13-14] Despite this concession, Espinosa contends that the "James settlement was credited against and extinguished [the TUFTA] claim for separate damages against James." [Appellee's Brief p. 19] As discussed below, nothing within the James Settlement Agreement supports this statement. [CR 2023-29][1]

Because Espinosa sued the James Defendants for both joint liability and sole liability damages, the law required that Espinosa allocate the James Settlement proceeds within the four corners of the James Settlement Agreement to avoid a credit for nonsettling defendants. "[I]f

---

[1] "CR" refers to the original Clerk's Record filed on September 26, 2014, "1st Supp CR" refers to the Clerk's Record filed on November 3, 2014, "2nd Supp CR" refers to the Clerk's Record filed on December 8, 2014, and "3rd Supp CR" refers to the Clerk's Record filed on December 24, 2014.

settlement monies were also paid on claims for which there is no joint and several liability, it is the plaintiff's burden to establish any reduction in a settlement agreement by tendering a settlement agreement that allocates the settlement amount between sole and joint liability claims." *Ramsey v. Spray*, No. 02-08-00129-CV, 2009 Tex. App. LEXIS 9737, at *9 (Tex. App.—Fort Worth Dec. 23, 2009, pet. denied) (mem. op.); *see Galle*, 262 S.W.3d at 573 (noting "theoretic possibility" that settlement agreement covered only settling defendant's sole liability damages but holding plaintiffs had burden to allocate settlement proceeds).  Espinosa failed to do so, entitling Poe to a credit for the entire James Settlement.

## C.     The Settlement Agreement Does Not Allocate

Espinosa incorrectly contends that the following language in the James Settlement Agreement allocated settlement proceeds:

> Nothing in this release language nor any other provision of this Agreement is intended to release any claims Plaintiffs have against the Licensees, Wells Fargo, or any other party to the Lawsuit.  Those claims are expressly and specifically reserved.  Except as expressly provided herein, there are no third party beneficiaries to this Agreement.

[Appellee's Brief p. 21; CR 2027]

Very similar language was held not to allocate settlement proceeds. *See Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 6 (Tex.

4

App.—Waco 2007, pet. denied). There, the settlement agreement between Lofts and Travelers stated:

> IMPERIAL LOFTS and TRAVELERS expressly agree that the Release only extends to the above-described policy and the first-party property claim asserted by IMPERIAL LOFTS. It shall not apply to any third-party claims asserted by IMPERIAL LOFTS in the [lawsuit].

*Id.* at 6 n.4. The court expressly held that this settlement agreement "does not allocate the $600,000 settlement payment" and noted that the plaintiff apparently confused a release with a settlement credit. *Id.* at 6 & n.4. Allocation is different than clarifying that the settlement agreement does not release other parties.

Espinosa could have allocated had he chosen to do so. In *LJ Charter*, the settlement agreement stated that the settlement was for "fuel and storage" and that it resolved a quantum meruit claim lodged only against the settling party. *See* 2009 Tex. App. LEXIS 9469 at \*27. The court held that because the settlement proceeds were for the sole liability of the settling party and because the settlement agreement allocated the proceeds to the sole liability damages, settlement credits would not apply to those separate damages. *Id.* at \*27-28. Although not decided on one-satisfaction grounds, the settlement agreement in *Lundstrom v. United Services Automobile Association* specified that the $400,000 settlement

was apportioned as follows: $95,000 for a townhome purchase, $30,000 for damages to contents of the townhome, and $275,000 for physical injuries to the plaintiffs. *See* 192 S.W.3d 78, 82 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also Genie Indus. v. Matak*, 462 S.W.3d 80, 92 (Tex. App.—Corpus Christi 2012) (noting settlement agreement allocated settlement proceeds only to payment of actual damages, not punitive damages), *rev'd on other grounds*, 462 S.W.3d 1 (Tex. 2015).

Espinosa cites a case from the Amarillo Court of Appeals for the proposition that allocation does not require any magic language. *See B.T. Healthcare, Inc. v. Honeycutt*, 196 S.W.3d 296, 299 (Tex. App.—Amarillo 2006, no pet.). While true, the *Honeycutt* case actually supports Poe's position. The *Honeycutt* Court held that the settlement agreement did not allocate between sole and joint liability damages because it released "claims brought or that could have been brought, events described in and issues related in any way to the lawsuit" and because Honeycutt's "live pleading at the time of the settlement . . . expressly sought to hold all the defendants jointly and severally liable for his injuries." *Id.* Much like *Honeycutt*, in which the trial court erred by not applying the settlement credit, Espinosa sought joint liability against the James Defendants for all damages and released the James Defendants from "any and all claims"

that Espinosa brought or could have brought against the James Defendants in the lawsuit. [CR 2025]

The James Settlement Agreement does not allocate settlement proceeds to apply only to the James Defendants' sole liability. [CR 2023-29] A settlement credit was therefore required.

## D. Espinosa Sued the James Defendants for All Damages

Espinosa boldly asserts in his brief that "[a]t no point did the Receiver seek to hold James jointly liable with Poe for his commissions." [Appellee's Brief p. 14] To the contrary, Espinosa devoted thirty pages of his petition to allege that the James Defendants orchestrated everything Retirement Value did, including the recruitment and payment of Licensees such as Poe, and that the James Defendants were therefore liable for the entire $77.6 million invested in Retirement Value by the participants. [CR 613, 639-669] As Espinosa asserted in his petition, the commission payments to Licensees were made from the participants' initial loan proceeds. [CR 681]

Review of Espinosa's live pleading indisputably establishes that Espinosa sued the James Defendants for all damages alleged in the case, including the commissions paid to Licensees such as Poe. Espinosa alleged that the participants loaned over $77 million to Retirement Value, [CR 680] that Retirement Value paid commissions to Licensees from the

participants' $77 million in loan proceeds, [CR 681] that Retirement Value had been ordered to make restitution to participants for the $77 million, [CR 691] and that Espinosa sued the James Defendants for recovery of the entire $77 million. [CR 680-81, 690-91; *see also* CR 641, 664, 687-89] It is inaccurate to now claim that Espinosa never sued the James Defendants for Poe's commissions because Poe's commissions were included within the lump sum Espinosa sued the James Defendants to recover.[2]

## E.    James Defendants' Liability Never Adjudicated

Espinosa suggests that this Court should look only to the judgment against Poe to determine whether there should be any settlement credit. [Appellee's Brief p. 17] This is an incomplete statement of the law.  The Court must look to both the judgment against Poe and Espinosa's pleadings against the James Defendants to determine whether Espinosa sued both defendants for the same damages.  *See Dalworth Restoration, Inc. v. Rife-Marshall*, 433 S.W.3d 773, 785 (Tex. App.—Fort Worth 2014, pet. dism'd) (noting that "the record confirms that some of the settled and tried claims, as pled, overlapped to the extent that the claims commonly

---

[2] That Espinosa did not assert a TUFTA claim against the James Defendants for recovery of Poe's commissions is irrelevant because application of the one-satisfaction rule does not depend on the cause of action asserted and instead focuses on the injury. *See Osborne v. Jauregui, Inc.*, 252 S.W.3d 70, 75 (Tex. App.—Austin 2008, pet. denied) (en banc); *Cohen*, 106 S.W.3d at 310; *Buccaneer Homes of Alabama, Inc. v. Pelis*, 43 S.W.3d 586, 590 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  The alleged injury is the payment of commissions to Poe.

sought damages related to appellee's personal possessions"); *Galle*, 262 S.W.3d at 571 (noting overlapping damage categories alleged in live pleadings); *Goose Creek Consol. Indep. Sch. Dist. of Chambers v. Jarrar's Plumbing*, 74 S.W.3d 486, 503 (Tex. App.—Texarkana 2002, pet. denied) (reviewing pleading allegations against settling defendant to determine whether damages overlapped with those awarded against nonsettling defendant). Espinosa unquestionably sued the James Defendants for all damages, including the damages ultimately awarded against Poe.

Espinosa continues by arguing that there can be no settlement credit because Poe was not found jointly liable with the James Defendants. [Appellee's Brief pp. 18] This too is wrong because the James Defendants' liability was never adjudicated. *See Crown*, 22 S.W.3d at 391 ("Normally, claims against the settling party are dropped before the jury returns a verdict, so the amount of sole damages that the settling party is potentially liable for is rarely determined."). Had the James Defendants not settled, the trial court may have ultimately adjudged them jointly liable for the entire $77 million, just as Espinosa alleged in his petition.

Moreover, Espinosa's contention that only the Poe judgment is relevant does not withstand scrutiny. A judgment against a nonsettling defendant will rarely if ever reflect that the nonsettling defendant was jointly

liable with a settling party.  For example, the *Dalworth Restoration* Court reversed and rendered judgment for the nonsettling defendant because an unallocated, pretrial settlement exceeded the nonsettling defendant's liability as found by the jury.  *See* 433 S.W.3d at 782-83, 788.  The trial court's judgment in that case is in the appendix to this reply brief. [Reply App. Tab 1] That judgment does not state that the nonsettling defendant was jointly liable with any other party.[3]  That the judgment against Poe does not reflect joint liability with the James Defendants is not dispositive.

## F.  Espinosa's Capacity Argument

Espinosa's argument that he asserted different claims in separate capacities is new and was not argued to the trial court. [CR 2081-86; 2 RR 13-38]  If not waived, the argument is without merit because the James Settlement Agreement says nothing about Espinosa having settled with the James Defendants in only one capacity or another or about Espinosa collecting settlement proceeds in only one capacity or another. [CR 2023-29] Even if Espinosa sought damages in two capacities or for distinct injuries, he sued the James Defendants for all damages without allocating

---

[3] The *Dalworth* Court also held that the jury's finding that Dalworth was "wholly responsible for appellee's injuries [did] not preclude the application of a settlement credit that relates to the same injuries."  *Id.* at 787

the settlement proceeds.[4]  Without language allocating the settlement proceeds among the allegedly different capacities and injuries, the law presumes that the settlement proceeds apply only to joint damages, entitling Poe to a credit for the full amount of the unallocated settlement. *Ellender*, 968 S.W.2d at 928; *Dalworth Restoration*, 433 S.W.3d at 782; *Galle*, 262 S.W.3d at 573.

## G.    Conclusion

The Supreme Court of Texas decided *Ellender* in 1998 and announced the burden-shifting framework that Poe asks this Court to apply in this appeal.  Since *Ellender*, Texas litigants have been on notice that it is the plaintiff's burden to present a settlement agreement allocating settlement proceeds between joint liability and sole liability damages and that the failure to do so entitles nonsettling defendants to a credit for the entire amount of the unallocated settlement.  *See* 968 S.W.2d at 928.  The Supreme Court placed this burden on the plaintiff, recognizing that the plaintiff is in a better position than nonsettling defendants to allocate damages within a settlement agreement and that "[n]onsettling parties

---

[4] In addition, the cases upon which Espinosa relies are easily distinguished.  One involved a birth-injury settlement 22 years before the wrongful death lawsuit involving the child's mother.  *See Christus Health v. Dorriety*, 345 S.W.3d 104, 114 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).  The other held that the appellant waived his argument under the one-satisfaction rule.  *Reservoir Sys. v. TGS-NOPEC Geophysical Co., L.P.*, 335 S.W.3d 297, 308 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

should not be penalized for events over which they have no control."  *Id.* Applying the law and rendering judgment for Poe does not lead to an absurd result; it leads to the result required by the law.

Poe met his burden under *Ellender* and its progeny by advising the trial court of the amount of the James Defendants' settlement and asking the trial court to apply a settlement credit prior to entry of judgment. Espinosa could have avoided application of settlement credits for the nonsettling defendants by clarifying within the James Settlement Agreement that the proceeds applied only for the profits that the James Defendants allegedly received, only for the return of money paid to the James Defendants for the purchase of insurance policies, or only for punitive damages.  Espinosa did not do so.  Espinosa therefore failed to meet his burden under *Ellender*, and Poe was entitled to a credit for the entire $5.5 million James settlement and entry of a take-nothing judgment in his favor.  *See Ellender*, 968 S.W.2d at 928; *Dalworth Restoration*, 433 S.W.3d at 782-83; *Galle*, 262 S.W.3d at 573; *Goose Creek*, 74 S.W.3d 486, 503-04.  The trial court erred by failing to render judgment that Espinosa take nothing against Poe.

**Issue Two: The trial court abused its discretion by overruling Appellants' objections to Espinosa's summary judgment evidence.**

Espinosa contends that Burchett was qualified to offer the opinions stated in his summary judgment affidavit solely because Burchett is a CPA. [Appellee's Brief p. 27] Burchett's affidavit states only that he is "a certified public accountant and ha[s] been since 1992." [2nd Supp CR 233] This is not enough. The summary judgment affidavit must establish the expert's qualifications to testify, and the burden of proving qualifications is on the party proffering the expert as a witness. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30-31 (Tex. 1997). Burchett's affidavit does not satisfy this standard by affirmatively establishing his qualifications to testify, and the trial court thus abused its discretion by overruling Poe's objection to Burchett's affidavit testimony.

Espinosa also contends that he was qualified to testify about the value of Retirement Value's assets because he, as receiver, was the owner of the assets. [Appellee's Brief p. 22] Neither of the cases cited by Espinosa addresses testimony of a receiver about the value of receivership assets. Because Espinosa's summary judgment affidavit did not establish his qualifications to testify, the trial court abused its discretion by overruling Poe's objections.

13

**Issue Three:** The trial court erred by rendering summary judgment for Espinosa on his TUFTA claim against Appellants because Espinosa lacked standing and because genuine issues of material fact existed for at least one element of each of Espinosa's TUFTA theories.

## A. Espinosa's Summary Judgment Evidence

Most of the evidence Espinosa relies on in his Appellee's Brief was never cited to the trial court in support of his motion for summary judgment. [2nd Supp CR 3-22] For example, in the TUFTA section of his motion for summary judgment (the only ground upon which the trial court granted summary judgment), Espinosa cited only a few paragraphs in the Espinosa and Burchett affidavits and made reference to only two individual pages of the exhibits attached to the Espinosa and Burchett affidavits. [2nd Supp CR 17, 13-18] Despite having not pointed the trial court or the parties to any of the other hundreds of pages attached to his motion for summary judgment or to another almost 450 pages of documents he purportedly incorporated by reference into his motion for summary judgment, [2nd Supp CR 4; see CR 170-610] Espinosa now relies primarily on that unreferenced evidence in arguing that the summary judgment against Poe should be affirmed.

The summary judgment cannot be affirmed based on the unreferenced evidence because Espinosa did not rely on it in the trial court and because his general references to summary judgment evidence are

insufficient to sustain a motion for summary judgment. Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."); *see Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 81 (Tex. 1989) ("[A] general reference to a voluminous record which does not direct the trial court and parties to the evidence on which the movant relies is insufficient."); *Camden Machine & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 310 (Tex. App.—Fort Worth 1993, no writ) (disallowing adoption of a co-defendant's motion for summary judgment by reference because the motion itself did not set forth sufficient grounds to support summary judgment); *see also Renfro v. Cavazos*, No. 04-10-00617-CV, 2012 Tex. App. LEXIS 1230, at *14-16 (Tex. App.—San Antonio Feb. 15, 2012, pet. denied) (mem. op.) (rejecting nonmovant's attempt to incorporate her prior motion for summary judgment into her summary judgment response). This Court should not consider the evidence on which Espinosa did not rely in the trial court.

## B.    Creditor Claims – TUFTA § 24.005(a) & § 24.006(a)[5]

Commission payments to Licensees were made shortly after Retirement Value's receipt of the participants' loan proceeds. [2nd Supp CR 205-06] Poe presented evidence in his summary judgment response that

---

[5] *See* Appellants' Brief, pp. 41-44.

the participants in this case would have claims only once the life insurance policies matured. [Appellant's Brief, pp. 41-44; see, e.g., 2nd Supp CR 642-62, 720] Those claims thus did not arise "before or within a reasonable time after the transfer was made or the obligation was incurred" or "before the transfer was made or the obligation was incurred." Tex. Bus. & Com. Code Ann. §§ 24.005(a), .006(a).

Espinosa does not dispute Poe's evidence but now contends that the participants always had a claim against Retirement Value because of Retirement Value's securities fraud. [Appellee's Brief, p. 38] Espinosa did not make this argument to the trial court, [2nd Supp CR 13-18, CR 1947-50] and it cannot be a ground on which this Court affirms summary judgment in Espinosa's favor.[6] *See, e.g., Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).

At minimum, though, there are fact issues as to when those claims arose in relation to commission payments to Poe. *See generally Howard v. Rayco Steel, Ltd.*, No. 04-11-00521-CV, 2012 Tex. App. LEXIS 8174, at *7 (Tex. App.—San Antonio Oct. 3, 2012, no pet.) (mem. op.) (noting that trial court found that the plaintiff's claim arose on the date it filed its lawsuit); *Flores v. Robinson Roofing & Constr. Co.*, 161 S.W.3d 750, 757 (Tex.

---

[6] Espinosa argued in his reply brief only that the "investors were indisputably creditors since they loaned RV money." [CR 1948-49]

App.—Fort Worth 2005, pet. denied) (noting fact questions in summary judgment proceeding when alleged transfer occurred after a lawsuit was filed). A claim need not be reduced to judgment to allow for relief under TUFTA, but the summary judgment evidence must still establish the existence of qualifying claims as a matter of law. *See Williams v. Performance Diesel*, No. 14-00063-CV, 2002 Tex. App. LEXIS 2735, at *9-14 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.) (mem. op.) (holding plaintiff failed to prove claim arising at time of or within reasonable time of transfers as a matter of law).

This lawsuit was filed on May 5, 2010, and the transfers to Poe necessarily occurred prior to that date. [2nd Supp CR 72, 319] Espinosa references the trial court's order requiring Retirement Value to make restitution to participants in February 2013, but Espinosa did not reference any other evidence in his motion for summary judgment to show that there were claims that arose before or within a reasonable time after any transfers to Poe. *See* Tex. Bus. & Com. Code Ann. §§ 24.005(a), .006(a). There are thus genuine issues of material fact as to whether any participants had qualifying claims under TUFTA. Because this element is common to each of Espinosa's TUFTA theories against Poe, the summary judgment must be reversed in its entirety.

## C.    Actual Intent – TUFTA § 24.005(a)(1)[7]

Espinosa again relies on Ponzi scheme and fraudulent scheme cases in an effort to meet his burden of proving actual intent as a matter of law, arguing in his brief that "[p]roving that a debtor operated as a Ponzi scheme proves actual intent to hinder, delay, or defraud any creditor or debtor required by TUFTA § 24.005(a)(1)." [Appellee Brief, p. 34-35; pp. 32-38] The trial court did not, however, grant summary judgment for Espinosa on this theory, meaning Espinosa cannot now rely on it as a basis for this Court to affirm the summary judgment. [CR 1973-74] *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

Espinosa attempts to sidestep this hurdle by claiming that there is no difference between a Ponzi scheme and a fraudulent scheme. [Appellee Brief, p. 34] Distinction or not, the trial court denied summary judgment on Espinosa's theory that Retirement Value operated as a Ponzi scheme *or fraudulent scam*. Espinosa's motion for summary judgment included seven pages of argument that the Licensees were participants in a Ponzi scheme *or fraudulent scam*, that "agents in a fraudulent investment scam are required to return the income derived from the scam," and that the Licensees "have to return their commissions as a matter of law. [2nd CR

---

[7] *See* Appellants' Brief, pp. 60-64.

Supp 7-13] In a separate section of his motion, Espinosa asserted an alternative TUFTA argument. [2nd Supp CR 13] The trial court granted summary judgment only on Espinosa's alternative TUFTA claim. [CR 1973-74] In other words, Espinosa expressly asked the trial court to grant summary judgment on the ground that Retirement Value operated as a Ponzi scheme or fraudulent scam—the same argument he now relies on as proof of an alleged fraudulent intent for transfers to Poe—but the trial court denied summary judgment on that theory of liability.  The trial court's order is specific to the TUFTA claim only, meaning this Court cannot affirm summary judgment on a ground on which the trial court denied summary judgment.  *See id.*

This is significant here because Espinosa points to no other evidence of fraudulent intent for any transfer *to Poe* under Tex. Bus. & Com. Code Ann. § 24.005(a)(1).  The statute clearly requires that the debtor make "the transfer" with fraudulent intent,[8] but Espinosa's only argument is that *all transfers* were fraudulent because Retirement Value operated as a Ponzi scheme or fraudulent scam, the theory on which the trial court denied summary judgment.  Nowhere in his briefing to the trial court or to this

---

[8] In relevant part, section 24.005(a)(1) states that *"[a] transfer* made . . . by a debtor is fraudulent . . . if the debtor made *the transfer* . . . with actual intent to hinder, delay, or defraud any creditor of the debtor."  Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (emphasis added).

Court does Espinosa attempt to show evidence of fraudulent intent with regard to a commission transfer *to Poe.* Because section 24.005(a)(1) requires proof that a specific transfer was made with fraudulent intent and because the trial court denied summary judgment on Espinosa's theory that all transfers to Licensees were fraudulent, Espinosa failed to prove as a matter of law that Retirement Value transferred commissions to Poe in violation of section 24.005(a)(1).

## D. Insolvency and Remaining Assets – TUFTA § 24.005(a)(2) & § 24.006(a)[9]

Espinosa clarified that he does not contend that a commission payment to Poe rendered Retirement Value insolvent. [Appellee's Brief, p. 48] Rather, Espinosa contends that Retirement Value was insolvent from its inception, [Appellee Brief p. 48] but the summary judgment evidence is conflicting on that issue in many respects.

Retirement Value had $154 million in life insurance policies and $25 million in cash and securities at the time of the receivership and gained another $4 million in cash by August 2011. [2nd Supp CR 92-93, 734-38] Retirement Value's liabilities are alleged to be approximately $77 million, far less than its assets. Retirement Value never had an obligation to

---

[9] *See* Appellants' Brief, pp. 44-60.

reserve premiums sufficient to cover all insurance policies through maturity because the participants were obligated to contribute once the initial premium reserves were exhausted, which would fund the policies to maturity. [2nd Supp CR 645, 642-62] The maturing policies then funded the payments back to the participants. [2nd Supp CR 720, 645] The cash and insurance policies on hand exceeded the amount of Retirement Value's liabilities.

Espinosa told the bankruptcy court that Retirement Value had forty-eight life insurance policies and about $30 million in cash, that Retirement Value needed about $19 million in cash to pay for all of the policies through maturity, and that there was sufficient cash in reserve to hold all life insurance policies to maturity and pay all participants their money back "in full." [2nd Supp CR 734-38] This evidence, much of it from Espinosa himself, contradicts Espinosa's contentions that Retirement Value was insolvent from its inception.

There were also issues with Espinosa's summary judgment evidence, including qualifications, methodology, and credibility determinations that should have been reserved for a jury. It is well settled that all inferences, including credibility and weight-of-the-evidence determinations, must be resolved in favor of the nonmovant. *See, e.g., Great Am. Reserve Ins. Co.*

*v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Among other things, Burchett admitted that at policy maturity, Retirement Value would receive the face amount of the policy and would have more than enough money to pay the $77 million in liability to the participants. [2nd Supp CR 758] Burchett also conceded in his deposition that in order to determine fair value, one must determine what a willing buyer would pay and what a willing seller would accept for an asset or liability. [2nd Supp CR 761] Burchett admitted that, on the open market, the liability represented by the obligation to the participants would be discounted and that the fair value of the liability was different from what he represented in his report. [2nd Supp CR 761] *See Waller v. Pidgeon*, No. 3:06-CV-0506-D, 2008 U.S. Dist. LEXIS 44238, at *16-22 (N. D. Tex. June 5, 2008) (mem. op.) (holding that plaintiff receiver failed to prove insolvency as a matter of law because TUFTA does not require book value for liabilities and that the *adjusted fair value of defendant's liabilities* was less than the fair value of the assets). The law thus contemplates the adjustment of liabilities to represent their fair value, a calculation Burchett did not perform. There are also fact issues as to whether Espinosa and his experts credibly testified to the fair value of Retirement Value's assets. Fact questions thus remain as to the fair value of Retirement Value's liabilities and assets.

Espinosa also contends that Poe presented no expert testimony to contradict Espinosa's evidence of the fair value of Retirement Value's assets. [Appellee Brief p. 30, 50] But the law does not impose a burden on Poe to present expert testimony in opposition to a motion for summary judgment when the movant's own summary judgment evidence fails to establish entitlement to judgment as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999) ("The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense."). Regardless, Poe presented substantial evidence in response to the motion for summary judgment, including excerpts from the depositions of Espinosa and Burchett that called their opinions into question. All conflicts in the summary judgment evidence must be resolved in Poe's favor, including the inconsistencies within Espinosa's own evidence and the controverting evidence presented through Poe's response, and the trial court erred by granting Espinosa's motion for summary judgment.

**PRAYER**

Appellants Poe and Senior Retirement Planners, LLC respectfully request that the Court reverse the trial court's judgment in its entirety and render a take-nothing judgment against Espinosa for all of his claims

against Appellants. Alternatively, Appellants pray that the Court reverse the trial court's judgment and remand for a new trial. Appellants also generally pray for rendition of judgment in their favor, or alternatively, for remand for a new trial on any ground this Court deems appropriate.

Respectfully submitted,

**ALDRICH PLLC**

Scott Lindsey
State Bar No. 24036969
slindsey@aldrichpllc.com
1130 Fort Worth Club Tower
777 Taylor Street
Fort Worth, Texas 76102
Telephone: 817-336-5601
Telecopier: 817-336-5297

**ATTORNEYS FOR
APPELLANTS JAMES POE
AND SENIOR RETIREMENT
PLANNERS, LLC**

## CERTIFICATE OF COMPLIANCE

I certify that this brief was produced on a computer using Microsoft Word and contains 5,171 words, as determined by the computer software's word-count function, excluding the sections of the brief listed in Texas Rule of Appellate Procedure 9.4(i)(1).

_____
Scott Lindsey

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered pursuant to Rule 21a, Tex. R. Civ. P., to all counsel or parties of record as shown below.

Dated this 28th day of August, 2015.

Via electronic service and e-mail:

John W. Thomas
jthomas@gbkh.com
George, Brothers, Kincaid & Horton, L.L.P.
114 W. Seventh, Suite 1100
Austin, TX 78701-3015
**ATTORNEY FOR APPELLEE**

_____
Scott Lindsey

NO. 03-14-00518-CV

IN THE COURT OF APPEALS
THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

---

JAMES POE AND SENIOR RETIREMENT PLANNERS, LLC, Appellants

vs.

EDUARDO S. ESPINOSA, IN HIS CAPACITY AS RECEIVER OF
RETIREMENT VALUE, LLC, Appellee

---

APPELLANTS' REPLY APPENDIX

---

I.      Final Judgment – Cause No. 17-237012-09,
        *Rife-Marshall v. Dalworth Restoration, Inc.*.................................Tab 1

CAUSE NO. 17-237012-09

| | | |
|---|---|---|
| MRS. ANGIE RIFE-MARSHALL | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | TARRANT COUNTY, TEXAS |
| | § | |
| DALWORTH RESTORATION, INC. | § | |
| (LIBERTY MUTUAL) | § | |
| Defendant. | § | |
| | § | |
| | § | 17TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

**BE IT REMEMBERED THAT** this case came on for trial by jury at 9:00 a.m. on Monday, 16 April 2012, and the parties were present and had with them their counsel, and all did at that time announce ready, and a jury was selected and seated, and then the presentation of the case to the jury did begin, and it continued thereafter from day to day until the jury returned a verdict; and during that time period and prior to the time when jury argument was completed and the jury retired to deliberate no party requested and received leave of Court to file any late filed pleading; but after the jury did retire to deliberate one party, being Plaintiff, did request permission pursuant to Rule 66 for the filing of a Trial Amendment, which said request was Denied; and the jury did continue its deliberations and on the afternoon of Friday, 20 April 2012, did return its verdict in open court; and at that time, upon request of counsel for Plaintiff, and with no objection made, the jury was polled, and it appearing that there was in fact a verdict of the jury with no indication to the contrary when the jury was polled by the Court, the verdict of the jury was then received and filed, on the afternoon

FINAL JUDGMENT

Copy mailed to each Pro Se
And Attorney of Record
6-15-12
Marsh, Reynolds

Court's Minutes
Transaction #

of Friday, 20 April 2012, and at that time the jury was dismissed, no party objecting to the dismissal of the jury; and the jury by its verdict having found fault (negligence) on the part of one party only, that being defendant, Dalworth Restoration, Inc., and having made findings that this negligence caused harm to Plaintiff for "damage related to personal property" in the amount of $101,000.00, and caused "mental anguish sustained by Plaintiff in the past" in the amount of $50,000.00, which totals $151,000.00; and the Court finding from the record of the case that claims in this case were first filed by Plaintiff against the defendant, Dalworth Restoration, Inc., on or about 11 January 2010; and the Court having confirmed that there is no evidence in the record of any offer of settlement or other activity which would impact the calculation of pre-judgment interest under the statutes of the State of Texas, and it appearing therefore that the amount of pre-judgment interest to be due and owing in this case through the date of the signature of this judgment [1] is $12,080.00; it is, therefore,

ORDERED, ADJUDGED AND DECREED, that PLAINTIFF, MRS. ANGIE RIFE-MARSHALL, to have and recover against DEFENDANT, DALWORTH RESTORATION, INC., as damages, including pre-judgment interest, the total amount of $163,080.00; and, it is, further,

ORDERED, ADJUDGED AND DECREED, that, from the date of the signing of this judgment until the date of satisfaction in full of this judgment, post-judgment interest shall accrue at the highest lawful and statutory rate as provided by the laws of the State of Texas; and, it is,

---

[1]

Actually, this calculation is based on a rate of 5% per annum, and assumes this judgment had been signed on the date (20 April 2012) when the jury returned its verdict; and also, since the claim against Dalworth was filed [see: Court EXHIBIT "2"] on 11 January 2010, and the 181st day thereafter is 11 July 2010, and the length of time from 11 July 2010 to 20 April 2012 is in excess of 21 months, the total interest rate for this period has been "rounded down" to 8%; and $151,000.00 x 8% = $12,080.00.

**FINAL JUDGMENT**  Page 2

further,

ORDERED, ADJUDGED AND DECREED, that Plaintiff shall, and does, recover over and against Defendant all taxable costs of court, which shall be established through the preparation of a proper Bill of Costs by the Clerk of this Court in customary manner, should such Bill of Costs be requested by Plaintiff; and, it is, further,

ORDERED, ADJUDGED AND DECREED, that, upon request of Plaintiff, execution shall issue from this Court in connection with this judgment, and for enforcement and satisfaction of it, there being no indication that any portion of the amount awarded to Plaintiff by this judgment, or any portion of that amount, has been paid by DEFENDANT, Dalworth Restoration, Inc., to Plaintiff.

Signed this the 13th day of June, 2012.

_____
Judge Presiding

FINAL JUDGMENT                                                                 Page 3