**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00329-CV**
_____

**TERRY LYNN JOHNSON, Appellant**

**V.**

**STEVEN JAMES JOHNSON, Appellee**

**On Appeal from the County Court at Law**
**Polk County, Texas**
**Trial Cause No. CIV27540**

**MEMORANDUM OPINION**

Appellant Terry Lynn Johnson ("Terry") appeals from the trial court's judgment in favor of appellee Steven James Johnson ("Steven") as to his claim against Terry for personal injuries he allegedly sustained when Terry shot his foot during the marriage. In two issues, Terry challenges the trial court's granting of Steven's motion for rehearing, which allowed his property and personal injury claim to proceed, and she contends the trial court abused its discretion by awarding Steven

1

damages for medical expenses, lost wages, and pain and suffering. We affirm the trial court's judgment.

BACKGROUND

Terry filed a petition for divorce from Steven on October 4, 2012, and Steven answered and then filed a counter-petition for divorce. In his counter-petition, Steven asserted a cause of action against Terry for allegedly causing bodily injury to him by shooting his foot, and he sought damages for past and future medical expenses; lost earnings; diminution of earning capacity, loss of earning capacity, or both; past and future physical pain and suffering, as well as mental anguish; disfigurement; physical impairment; and exemplary damages.

On March 6, 2013, the trial court held a final divorce hearing, at which Steven and Terry were placed under oath. At that time, the judge of the Polk County Court at Law was the Honorable Stephen Phillips. Terry testified that she and Steven intended to enter a compromise and settlement agreement, release of claims, and covenant not to sue one another for personal injuries, including the shooting incident, and that she wanted the trial court to approve that agreement. Steven testified that he had reviewed the proposal for property division and that he wanted the trial court to enforce and approve the parties' agreement to release each other from liability. In addition, Steven testified that, except for some personal property that he wanted

2

Terry to return, he otherwise agreed with the parties' settlement.[1] With the exception of testimony that the parties would agree to release each other from liability, no other details about the nature of the agreement were revealed at the hearing. At the conclusion of the hearing, Judge Phillips stated, "I'll approve the agreement you've reached and grant your divorce."

The record indicates that on September 16, 2013, Steven's counsel sent a letter to Terry's counsel, in which he stated that Steven rejected the proposed final divorce decree and the proposed compromise and settlement agreement. The letter further stated that Steven did not agree to waive any rights to proceed with his personal injury lawsuit against Terry for the shooting. Terry subsequently filed a motion for entry of judgment, in which she asserted that the trial court had issued an "order" granting Terry's petition for divorce, and that the trial court found in the order that the parties agreed to the divorce and settlement of their property, as well as to "a mutual release of indemnity" regarding the shooting.

---

[1]An unsigned Compromise and Settlement Agreement, Release of Claims and Covenant Not to Sue, which stated that "in consideration of this Agreement," Steven agreed to release Terry and her successors, representatives, and insurance companies, from all personal injury claims arising from the "accident" appears in the appellate record. The proposed agreement also stated that Steven would indemnify Terry for any subrogation claims filed by "any homeowners insurance company" regarding the incident.

In response, on May 9, 2014, Steven filed a motion for rehearing, in which he asserted that the trial court should grant his motion because "at the time of the hearing[,] the terms and conditions of any settlement of the assault . . . were not set forth in sufficient detail to constitute a valid and binding resolution of the assault cause of action[.]" Steven also asserted that if the trial court were to determine that his cause of action for assault had been resolved, rehearing should be granted because Terry breached their agreement by terminating Steven's insurance. Steven also alleged that "there is no mutual release[]" because the divorce decree does not adequately set forth the parties' agreement. Attached to Steven's motion as an exhibit was an excerpt from the transcript of the final divorce hearing that took place on March 6, 2013. Attached to the transcript was Steven and Terry's property agreement,[2] which does not reference Steven's personal injury claim against Terry.

Judge Phillips held a hearing on Steven's motion for rehearing and the motion for entry of a decree in November 2014, at which time Steven's counsel argued that the parties' settlement agreement "did not specifically address the fact of his personal injury claims against [Terry] for shooting him with a gun. And I believe their argument is that it was all taken care of in the settlement agreement." Judge Phillips asked why the personal injury claim is not an independent cause of action, and Terry's counsel responded that the parties had both stated in open court that they

---

[2]The property agreement was attached to the transcript as exhibit P-1.

4

intended to release each other and read a portion of the previous hearing to Judge Phillips. Terry's counsel argued that he tried months later to obtain Steven's signature on the indemnity agreement and covenant not to sue, but Steven refused to sign both the agreement and the decree.

Steven's counsel argued that he could seek severance of the personal injury claim from the divorce, and he noted that the proposed agreement "the parties drafted between themselves makes no reference at all to any giving up of any rights under that. And the questions asked of Mr. Johnson at the hearing on March the 6th did not inquire as to whether he was going to compromise and resolve all of his claims against her[.]" Steven's counsel clarified, "that's why we asked for a re[]hearing, to clarify that this agreement that they had was for the division of their property, not resolution of his claim for being shot by her." At the conclusion of the hearing, Judge Phillips noted that a property agreement was in the court's file, stated that he would take notice of the file and all exhibits and documents, but he did not make a ruling on that date.

On June 30, 2016, the trial court conducted a hearing to "clarify" its ruling. By this time, the Honorable Tom Brown had succeeded Judge Phillips as judge of the Polk County Court at Law. After hearing the arguments of counsel, Judge Brown concluded that Judge Phillips had granted the divorce in 2013, and Judge Brown granted Steven's motion for rehearing regarding the "property issues and any other

5

claims between the parties." Near the end of the clarification hearing, Judge Brown stated, "the divorce is still granted." On June 14, 2018, Terry's counsel filed a proposed final decree of divorce with the trial judge and noted in his correspondence that the case had been heard in June 2016. According to Terry's counsel's letter, Judge Brown approved of the parties' March 2013 agreement at the June 2016 hearing and had severed the personal injury action from the divorce. Counsel stated in his letter that the personal injury action remained pending.

In the final divorce decree, signed on June 18, 2018, Judge Brown found that the parties have "a personal injury action severed from the divorce action still pending." The decree states that the Court considered the case on June 3, 2016. The decree included a provision that the trial court "expressly reserves the right to make orders necessary to clarify and enforce this decree[]" without affecting the finality of the decree. The decree included language of finality, including a ruling that all relief requested and not granted is denied.

On July 15, 2018, Steven filed a motion for new trial, in which he maintained that when the trial court orally granted the parties a divorce on June 30, 2016, the trial court "specifically carved out" and did not rule on Steven's assault cause of action regarding the injury to his foot. Steven argued that the final decree included the statement that "all relief requested in this case and not expressly granted is denied[,]" and he asserted that because his cause of action for assault was included

6

in the divorce petition, the trial court's final decree constituted a ruling on his assault claim. Additionally, Steven argued that due process required that he have notice and opportunity to review the final decree. On July 23, 2018, the trial judge signed a *nunc pro tunc* final decree of divorce, which states as follows, in pertinent part: "this judgment does not [a]ffect or include any finding in regard[] to the severed personal injury action of Steven James Johnson[.]"

On May 9, 2019, the trial court conducted an evidentiary hearing on the personal injury claim. Terry and Steven were the only witnesses. Steven testified that in December 2012, while he and Terry were separated and their divorce proceeding had begun, he went to the residence they had shared. According to Steven, he had "moved out to keep the peace[,]" but some of his personal belongings were still at the residence. Steven explained that when he arrived at the residence, he went to the front door and kicked it. Terry opened the door, and Steven went inside, but his belongings had been moved. Steven and Terry began to argue and exchange curse words. Steven testified that he cursed at Terry, and then she shot him. Steven denied touching Terry. After the shooting, Steven drove himself to the hospital in Livingston, and he testified that he was in the worst pain of his life. Steven explained that he was transferred to Memorial Hermann hospital, and he required two surgeries and spent ten days in the hospital. Counsel asked Steven to remove his

7

shoe and show his foot to the judge, and he did so. According to Steven, three of his toes required pins, and he lacks feeling in some of his toes.

Steven explained that when the shooting occurred, he was working as an oil operator on a pipeline, which involved "maintenance on heavy equipment." Steven testified that he was off work for approximately two months, and his employer did not compensate him during that time. According to Steven, he was making approximately a thousand dollars per week. According to Steven, he opted not to have a recommended third surgery, which would have severed a nerve in his foot because he would have lost all sensation in his foot. Steven testified that his doctors wanted him to undergo rehabilitation, but he "never did." Steven explained that he stayed in bed for five or six months before he was able to walk, and he was unable to work during that time. Steven testified that he was unable to return to work for about a year, and he is currently on disability due to the injuries to his foot, as well as an unrelated problem with his back.

A business records affidavit from Memorial Hermann Hospital, which showed Steven's outstanding medical bills in the amount of $29,002.13, was admitted into evidence. Steven testified that he incurred lost wages for approximately twenty weeks, and he explained that he also sought damages for pain and suffering, as well as disfigurement. According to Steven, Terry carried him on her medical insurance, so her insurance paid for eighty percent of the costs of his

8

care after the shooting. Steven testified that he was seeking six months of lost income from the trial court. Steven's medical records from Memorial Hermann were also admitted into evidence.

During cross-examination, Steven testified that both he and Terry had previously testified that they intended to enter into a compromise and settlement agreement that they would ask the court to approve. According to Steven, Terry shot him because he "called her a bad name." Steven explained, "I did not do [anything] else but run my mouth." Steven testified that he stopped working in March 2016.

According to Terry, she let Steven into the house after he broke the glass on the door, and he came around the corner and "slugged" her face. She explained that he had never hit her before. Terry testified that when she shot Steven, he was turning around to come back toward her, and he had already struck her. Terry testified that she then picked up the gun and fired at Steven. Terry explained that when she shot Steven, "[h]e was at the door. He was turning to come back and hit me again and get on me again." Terry testified that the police department had pictures of her face after Steven hit her, but she did not bring them to trial. Terry testified that Steven was "high and strung out and breathing like a bull." According to Terry, Steven had been smoking K2. Terry testified that she feared for her life when she shot Steven. Terry explained that she agreed to delay finalizing the divorce until Steven had his surgeries because he did not have insurance of his own.

On June 7, 2019, Judge Brown signed a judgment finding in favor of Steven and awarding Steven a total of $92,002.13: $29,002.13 for medical expenses, $13,000 of lost wages "for one half of lost wages related to community property[,]" and $50,000 for pain and suffering. Terry appealed.

ISSUE ONE

In her first issue, Terry argues that the trial court abused its discretion by granting Steven's motion for rehearing and allowing his personal injury claim to proceed. Specifically, Terry argues that the trial judge orally pronounced the parties' divorce on March 6, 2013, and she maintains that the "2013 pronounced decree" granted the parties' agreement of a mutual release of all claims for personal injury. In addition, Terry argues that the issues of divorce and property division were not severable because the trial judge must divide the parties' property in a divorce action.

We review the trial court's decision on the motion for rehearing for abuse of discretion. *Bridgestone Lakes Cmty. Improvement Ass'n, Inc. v. Bridgestone Lakes Dev. Co., Inc.*, 489 S.W.3d 118, 124 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A trial court abuses its discretion when its decision is arbitrary or unreasonable, or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We also review the trial court's decision regarding severance for abuse of discretion.

10

*Saxer v. Nash Phillips-Copus Co. Real Estate*, 678 S.W.2d 736, 739 (Tex. App.—

Tyler 1984, writ ref'd n.r.e.).

To address Terry's arguments, we turn first to the question of whether Judge

Phillips's pronouncement on March 6, 2013, constituted rendition of a final

judgment.[3] A judgment is rendered when the trial court officially announces its

decision in open court or by written memorandum filed with the clerk. *Hall v. Hall*,

No. 05-16-01141-CV, 2018 WL 1373951, at *2 (Tex. App.—Dallas Mar. 19, 2018,

no pet.) (mem. op.). "An intent to render judgment in the future does not satisfy this

test." *Id*. To constitute an oral pronouncement of judgment, "the words spoken or

written by the trial court must evince a present, as opposed to future act that

effectively decides the issues before the court[;]" that is, "'the trial court must clearly

indicate the intent to render judgment at the time the words are expressed.'" *Id*.

"Once a judgment is rendered by oral pronouncement, entry of a written judgment

is purely a ministerial act." *Id*.

As mentioned above, at the conclusion of the final divorce hearing, the trial

judge stated, I'll approve the agreement you've reached and grant your divorce."

---

[3]The record does not reflect that Terry ever asked the trial court to enforce the purported settlement agreement discussed in open court as a Rule 11 agreement, and Terry does not argue on appeal that the purported agreement was enforceable under Rule 11 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 11. Therefore, we do not consider that issue in our opinion, and we make no determination as to whether the purported agreement would have been enforceable under Rule 11.

"I'll" is a contraction of the phrase "I will." *Hall* is instructive regarding whether the trial court's statement constituted an oral rendition of judgment. In *Hall*, at the conclusion of the final hearing, the trial judge stated, "I'll grant the divorce. I'll approve the agreement of the parties." *Id*. at *1. The *Hall* court held that such "[w]ords indicating what the trial judge 'will grant' and 'will approve' do not signify a present rendition of judgment." *Id*. at *2.

As in *Hall*, Judge Phillips's statement expressing a future intent to approve the agreement and grant the divorce, using the language "I'll approve the agreement you've reached and grant your divorce[]" did not constitute a present rendition of judgment. *See id*. at *1-2. Therefore, the entire proceeding was properly before Judge Brown at the June 2016 hearing, at which he ruled that the parties' divorce is granted but granted a rehearing as to "property issues and any other claims between the parties." Despite his apparent belief to the contrary, Judge Brown's 2018 entry of a divorce decree was not merely ministerial because Judge Phillips had not rendered judgment by oral pronouncement. *See id*.

We turn now to the issue of whether Judge Brown's 2016 severance of Steven's personal injury claim was proper.[4] Terry maintains that because section

---

[4]The trial court signed two judgments: the divorce decree and the judgment on Steven's personal injury claim. There can be only one final judgment rendered in this cause per Rule 301 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 301. The record reflects that although the trial court severed Steven's personal injury claim from the divorce, the trial court did not assign the severed portion of the case

12

7.001 of the Texas Family Code requires the trial court to divide the parties' property in a divorce action, the trial court erred by "sever[ing] the issue of divorce from the issue of property division." According to Terry, "Judge Brown's statement that the parties were granted a divorce on March 6, 2013 should have precluded the granting of a rehearing on the property issues at least and also any personal injury claim."

Section 7.001 of the Family Code provides that a divorce decree "shall order a division of the estate of the parties in a manner that the court deems just and right[.]" Tex. Fam. Code Ann. § 7.001. "The 'estate of the parties' has been construed to mean only the parties' community property." *Wilson v. Wilson*, 44 S.W.3d 597, 600 (Tex. App.—Fort Worth 2001, no pet.) (citing *Cameron v. Cameron*, 641 S.W.2d 210, 214-15 (Tex. 1982); *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex. 1977)). Wages and salaries earned by the parties during the marriage are community property. Tex. Fam. Code Ann. § 3.002; *Bell v. Moores*, 832 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1992, writ denied). However, the Texas Family Code also provides that a recovery for personal injuries during the marriage, except for loss of earning capacity, is characterized as separate property. Tex. Fam. Code Ann. § 3.001. Steven's pleading sought damages from

---

its own cause number, such as by adding "-A" to the end of the cause number, to differentiate the severed portion of the case. We consider this a clerical error, where one of the parties could file a motion asking the trial court to correct this clerical error by signing a judgment *nunc pro tunc*. *See* Tex. R. Civ. P. 306, 316.

13

Terry for loss of earning capacity, but the trial court did not award such damages; rather, Steven was only awarded damages for wages that he lost during his convalescence after the shooting.[5]

Furthermore, generally "[a]ny claim against a party may be severed and proceeded with separately." Tex. R. Civ. P. 41. Rule 41 grants trial courts broad discretion regarding severance and consolidation of causes. *McGuire v. Commercial Union Ins. Co. of New York*, 431 S.W.2d 347, 351 (Tex. 1968). A claim may be severed if (1) the controversy involves more than one cause of action, (2) the severed claim would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same issues and facts. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). Terry has not demonstrated that the trial court abused its discretion by severing Steven's personal injury claim. *See id.*; *see also* Tex. Fam. Code Ann. §§ 3.001, 7.001; Tex. R. Civ. P. 41.

For all these reasons, we conclude that the trial court did not err by severing Steven's personal injury claim against Terry. Having concluded that because Judge Phillips's March 2013 statement did not constitute a pronouncement of judgment, the entire case was properly before Judge Brown, and having determined that Judge

---

[5]We note that the trial judge apparently believed that the award for lost wages constituted community property, since he awarded Steven "one half of lost wages related to community property[,]" and $50,000 for pain and suffering.

14

Brown did not err by severing Steven's personal injury claim, we further conclude that Judge Brown did not abuse his discretion by granting Steven's motion for rehearing. Accordingly, we overrule issue one.

## ISSUE TWO

In her second issue, Terry argues that the trial court abused its discretion by awarding Steven damages for medical expenses, lost wages, and pain and suffering. Terry asserts that the sufficiency of the evidence is relevant in determining whether the trial court abused its discretion. According to Terry, Steven's testimony was "not credible." Terry maintains that the damages awarded for pain and suffering were excessive and that Steven did not properly prove the amount of his lost wages.

When, as here, a trial court does not issue findings of fact and conclusions of law, "we must presume that the trial court resolved any disputed facts in a manner that is consistent with the trial court's ruling if the record contains evidence supporting such a resolution." *Majors Mgmt., LLC v. Price and Co.*, No. 09-17-00063-CV, 2018 WL 771008, at *3 (Tex. App.—Beaumont Feb. 8, 2018, no pet.) (mem. op.). The trial court's implied findings are not conclusive, and the appellant may use the appellate record to argue that the evidence is insufficient to support relevant implied findings. *Id.* "[When] an appellant attacks the legal sufficiency of an adverse finding on an issue on which [she] did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse

15

finding." *Univ. Gen. Hosp., LP v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The factfinder is the sole judge of the credibility of the witnesses and is responsible for resolving any conflicts in the evidence, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Id*. at 819-21; *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004).

The factfinder may choose to believe one witness over another, and we may not substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When evaluating legal sufficiency, we review the evidence in the light most favorable to the trial court's findings and indulge every reasonable inference that would support it, and when there is conflicting evidence, we presume the factfinder resolved the conflicting evidence in favor of the prevailing party and disregard that evidence in our review. *City of Keller*, 168 S.W.3d at 810, 820-21. We credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827.

In reviewing the factual sufficiency of the evidence, we weigh all the evidence, and we will set aside the judgment only if it is so against the great weight

and preponderance of the evidence that it is clearly wrong and unjust. *Id.* at 826; *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). If the appellant did not have the burden of proof at trial on the challenged finding, then we will "set aside the verdict only if the evidence that supports the finding is so weak as to make the [judgment] clearly wrong and manifestly unjust." *City of Austin v. Chandler*, 428 S.W.3d 398, 407 (Tex. App.—Austin 2014, no pet.) (citing *Cain*, 709 S.W.2d at 176).

As discussed above, Steven testified that he was making approximately $1000 per week before the shooting, and he testified that he was off work for approximately two months. Steven also testified that he stayed in bed for five to six months. The trial court awarded Steven lost wages in the amount of $13,000. It was the sole province of the trial judge to assess the credibility of the witnesses, resolve any conflicts in the evidence, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See City of Keller*, 168 S.W.3d at 819-21; *Sw. Bell Tel. Co.*, 164 S.W.3d at 625. Viewing the evidence in the light most favorable to the trial court's findings, we conclude that a reasonable and fair-minded factfinder could have determined that Steven was entitled to lost wages in the awarded amount. *See City of Keller*, 168 S.W.3d at 827. Therefore, the evidence of lost wages was legally sufficient. In addition, weighing all the evidence, we conclude that the trial court's award of lost wages was not so against the great weight and preponderance of the

evidence that it is clearly wrong and unjust. *See id.* at 826; *see also Cain*, 709 S.W.2d at 176. The evidence was factually sufficient to support the trial court's award of lost wages in the amount of $13,000.

We turn now to the award of $50,000 for pain and suffering. The existence of pain may be established by circumstantial evidence, as well as inferred or presumed as a consequence of severe injuries. *B.T. Healthcare, Inc. v. Honeycutt*, 196 S.W.3d 296, 301 (Tex. App.—Amarillo 2006, no pet.). "The process of awarding damages for amorphous, discretionary injuries, such as . . . pain and suffering, is inherently difficult because the injury constitutes a subjective, unliquidated, non-pecuniary loss." *Waltrip v. Bilbon Corp.*, 38 S.W.3d 873, 881 (Tex. App.—Beaumont 2001, pet. denied). The factfinder is given a great deal of discretion in awarding an amount of damages it deems appropriate because there are no objective guidelines to assess the monetary equivalent of such injuries. *Id.*

Steven testified that when his foot was shot, he experienced the worst pain of his life, and he required two surgeries to repair the injuries to his foot. Also before the trial judge were Steven's medical records from Memorial Hermann Hospital, which note that Steven suffered from acute pain due to trauma. Given the nature of Steven's injuries, as well as the discretion afforded to the trial court in determining an appropriate value to assign to the subjective, non-pecuniary loss, we conclude that a reasonable and fair-minded factfinder could have determined that Steven was

18

entitled to damages for pain and suffering in the awarded amount. *See City of Keller*, 168 S.W.3d at 827; *Waltrip*, 38 S.W.3d at 881. Therefore, the evidence of Steven's pain and suffering was legally sufficient. In addition, weighing all the evidence, we conclude that the trial court's award of $50,000 for pain and suffering was not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See id*. at 826; *see also Cain*, 709 S.W.2d at 176. The evidence was factually sufficient to support the trial court's award for pain and suffering.

Lastly, we turn to the evidence regarding Steven's medical expenses. As mentioned above, the trial court awarded Steven medical expenses in the amount of $29,002.13. The Memorial Hermann Hospital billing records that were introduced into evidence indicate that the balance owed after insurance payments was $29,002.13. Viewing the evidence in the light most favorable to the trial court's findings, we conclude that a reasonable and fair-minded factfinder could have determined that Steven was entitled to medical expenses in the awarded amount. *See City of Keller*, 168 S.W.3d at 827. Therefore, the evidence of medical expenses was legally sufficient. In addition, weighing all the evidence, we conclude that the trial court's award of medical expenses was not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See id*. at 826; *see also Cain*, 709 S.W.2d at 176. The evidence was factually sufficient to support the trial court's award of medical expenses in the amount of $29,002.13.

19

We conclude that the evidence was legally and factually sufficient to support the damages awarded in the trial court's judgment. Therefore, the trial court did not abuse its discretion by finding that Steven was entitled to damages of $92,002.13. *See Downer*, 701 S.W.2d at 241-42. We overrule issue two. Having overruled both of Terry's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on January 26, 2021
Opinion Delivered April 8, 2021

Before Golemon, C.J., Horton and Johnson, JJ.